The question arises under the Act of 1846, ch. 4, sec. 12, p. 17, which provides that
 
 “
 
 the president or cashier, shall pay • into the treasury of the State, 25 cents on each share of capital stock subscribed and paid for; and the first payment of the tax shall be made 12 months after the bank shall have commenced operations;” and sec. 20, ch. 99, Eevised Code, which imposes a tax of three cents on the dollar, of all bank-dividends.
 

 The question is : “Was it within the constitutional competency of the Legislature to impose a tax on the dividends of the bank ?”
 

 It is contended by the defendant, that the tax imposed by the charter exempts the bank and the stockholders from any additional tax ; not in words, but by a fair interpretation of the charter, according to the understanding of the parties in the offer and acceptance of the charter.
 

 It may be useful to our purpose to look at similar provisions in the several charters of our banks, and other corporations.
 

 In the renewed charter of the C. F. Bank of 1833, 2 R. S., s. 11, p. 50, the provision is “a tax of twenty-five cents on each share of stock owned by individuals. in the bank, shall be annually paid into the treasury of the State,” &c.; “
 
 a/nd the said bcurik shall not he liable to any fivrther tax.”
 

 The provision in the Bank of the State of North Carolina, of the same year, 2 R. S., s. 13, p. 61, is,
 
 “
 
 each share owned by individuals shall be subject to an annual tax of twenty-five cents,
 
 and no more,
 
 which shall be reserved out of the profits as they accrue,” &c. The Fayetteville Bank, chartered in 1848, is taxed in the same language as the Commercial Bank, so is the Bank of Washington, chartered in 1850, the Bank of
 
 *398
 
 Yanceyville, chartered in 1852, the Bank of Charlotte, in 1852, and the Parmer’s Bank, in the same year.''
 

 The property of such a corporation and the members has, by refinement, been divided into several species. 1. The franchise, or privilege of association for a common purpose. 2. The stock of the corporation. 3. The shares of the members. 4. The dividends. And a tax, it may be, on one, is not by
 
 necessary
 
 implication, a tax on any other. And so, it may be held that the
 
 dividends
 
 under the C. P. charter were not exempted from taxation; and that all the security against further imposition in the charter of the Bank of the State, is confined to the shares of individuals, and that the three other properties are exposed, without limit, to the legislative will.
 

 By the charter of the "W. and Raleigh Rail-road Co., 2 R. S., p. 342, s. 19. The property of the company, and shares therein,
 
 “
 
 are exempt from taxation.” Literally construed, the charter exposes to tax the dividend and franchise.
 

 The charter of the Raleigh and G. Railroad Co., 1850, p. 254, s. 8, exempts from taxation the
 
 raib'oad,
 
 engines,
 
 cars
 
 and
 
 profits,
 
 for fifteen years. By this mode of interpretation, the
 
 franchise and shares
 
 are exposed to taxation.
 

 The history of the times, as to the Railroads, forbids this construction. At this day all will - admit that the faith of the State, as understood to be pledged at the time, would be grossly violated by an impost on the franchise or dividends of either corporation.
 

 In the construction of charters, the position is not unfre-quontly met with, that
 
 in grants by the
 
 public,
 
 nothing passes Jnj implication. Charles' River Bridge
 
 v.
 
 Warren
 
 Bridge, 11 Peters’ R. 420. Nothing “is surrendered unless the intention to surrender is manifested by words too plain to be mistaken.”
 
 Ohio Life Ins. and Tr. Co.
 
 v.
 
 Debolt,
 
 16 How. 435. (per Taney.)
 

 It is submitted that a more reasonable and just rule is laid down in
 
 U. States
 
 v.
 
 Arredondo,
 
 6 Peters’ R. 740. “ The words of a grant are always construed according to the intention of the parties as manifested in the grant by its terms, or by the
 
 *399
 
 reasonable and necessary implication to be deduced from the situation of the parties, and of the thing granted, its nature and use.” This was said of a grant by the public. The Constitution of the United States is a grant by sovereigns. This ought to be C£ construed according to the sense of the terms, and the intention of the parties.” "When there is doubt or ambiguity arising from the words, or from other sources, interpretation has its proper place.
 
 “
 
 There may be obscurity, as to the meaning, from the doubtful character of the words used, or from other clauses in the same instrument, or from an incongruity or repugnancy between the words, and the apparent intention derived from the whole structure of the instrument, or its avowed object. In all such cases interpretation becomes indispensable.” 1 Story on Constitution, ss. 400, 401, et seq.
 

 Now, where it is provided, as in the charter of the Cape Fear Bank, that a tax of 25 cents shall be laid on the share, and that “
 
 the bank shall not be Hable for any further tax
 
 ;” and, as in the charter of the Bank of the State, that “ the share shall be taxed 25 cents and
 
 no
 
 more;” of what efficacy can these restrictions be, if the other properties of the bank and the members, may be taxed
 
 ecdlibituml
 
 The restriction is valueless ; yet no one will doubt, that it was inserted to exhaust tlie taxing power.
 

 This view of such cases secured a liberal interpretation in the case
 
 Gordon
 
 v.
 
 The Appeal Tax
 
 Court, 3 How. 145-6, and
 
 Bank of Cape Fear
 
 v. Edwards, 5 Ire. 516; and these cases fully sustain the rules of interpretation announced by the Court in
 
 United States
 
 v. Arredondo, and Mr. Justice Story, in his work on the Constitution.
 

 For the Commercial Bank it is insisted that, between the the public and the company, the tax to be paid was a subject matter of contract, and that they negotiated and agreed on the amount. It was not intended to be a bonus, which is a premium paid at the inception, or in instalments, as the price in case of land sales, but was, as it is called, a tax, in the ligiti-mate sense of the term. It is to be paid whether there be.
 
 *400
 
 profits or not; and it is submitted that, unless it was
 
 the
 
 tax agreed upon between the parties, it was most unreasonable to have fixed the amount. The charter is, in substance, a proposal by the public to this effect, that, for and in consideration, that the company will do this, and that thing, moreover, will pay an annual tax of 25 cents, the company shall have liberty to do thus and so; and, that when the company accepts the offer, it is equivalent to a pledge that no more tax shall be laid.
 

 If the charter admit of this interpretation, the taxing power is exhausted; for, as already shown, it would have been idle to have offered the terms as to a
 
 tax
 
 on the share, and assigned it a limit, if the public intended to reserve the power of taxing
 
 ad Mbitmn
 
 all the other properties of the bank and its members. In case of the
 
 Providence Bank
 
 v.
 
 Billings,
 
 Peters’ 514, it seems to be conceded in manyjDarts of the opinion, that if the amount of tax be in the contemplation of the contracting parties, and they fix that amount, it will be
 
 the contract
 
 on this subject, although no words of further exemption be used.
 

 The tax was the same on all the banks chartered before and after the State first undertook to raise revenue from the profits of money-dealing. Although the tax was laid on the share, every stockholder, as well as the public, expected it to bo paid
 
 out
 
 of the profits; and in contemplation it was expected to be a tax
 
 on
 
 the profits.
 

 In like manner, there are provisions in the Farmer’s Bank, Bank of Charlotte, and the Commercial Bank,
 
 that they shall not issue Mils of less denomination than three dollars.
 
 How, may the public restrain them to issue nothing less than five dollars ? If the Legislature cannot do this, it is only because the denomination of the bill was the subject-matter of contract. But, undoubtedly, the Legislature has the same power to alter the limit as to the size of the bills, as they have to advance the tax. Shall we say that the Legislature may limit the denomination to a higher figure ? If so, there is not a capitalist who has so understood the charter.
 

 
 *401
 
 Both the tax and the denomination of the hills are supposed to he matters of great interest to the capitalist, and constitute his inducements to vest his capital. This view is strongly advanced by the Court in
 
 State Bank of Ohio
 
 v.
 
 Knoof,
 
 at from page 380 to 402.
 

 A contract made for a specific tax is binding.
 
 “ This tax continues, although all other hanks should, he exemptedfrom, tax
 
 ation.Page 389.
 

 In the case of the Ohio Life and Trust Company, there was no specific tax imposed in the charter. See p. 433-4. The case of the
 
 State Bank of Ohio
 
 v.
 
 Knoof
 
 did not present the question whether the State may augment a specific tax; and the reasoning of the Court is adverse to the position.
 

 The case of
 
 Gordon
 
 v.
 
 Appeal Tax Court,
 
 3 How. 133, decided in 1844, is the only one which is alleged to be opposed to the claim of exemption from further tax on the Commercial 'Bank of 'Wilmington. The facts of the case are stated at length in the reported case; and so far as they affect the case before the Court, do not oppose the position assumed by the defendant. There were two persons claiming exemption; Gordon, under the act of 1821, and Cheston, under the act of 1835. The Court sustained the exemption claimed by Gordon, and denied it to Cheston. The bank in which Cheston was a stockholder was incorporated by act of Dec., 1835, (p. 136.) It was required to pay a bonus, &c. During the same session, and in the same month, (December,) a general law was enacted in regard to banks, embracing banks previously, as well as subsequently, chartered, which, by sec. 3, enacted that all banks should be taxable, and that the exemption theretofore granted, by act of 1821, should limit the taxation
 
 only on the franchises.
 
 See page 136.
 

 This act, enacted at the same session, went out to the public with the charter, and was a clear legislative declaration of a purpose to consider
 
 stock,
 
 &c., a different property from a
 
 franchise
 
 / and, in fact, was a declaration, that the tax imposed in the charter in which Cheston was a stockholder, was not intended to exhaust the taxing power. Doubtless, before
 
 *402
 
 a share of the stock was taken, these two acts, constituting the
 
 chapter of one
 
 session, were before the public. So that, the case properly understood is with the defendant, and renders consistent the decision in this case, with the reasoning of the Court in the cases before cited of
 
 Bank
 
 v.
 
 Knoof
 
 , decided in 1853, and Providence Bank, in 1830. Doubtless the subscribers in the Parmer’s and Planter’s Bank understood the extent of the exemption to be precisely as the Court held it to be.
 

 "With us this supposition is inadmissible as to the subscribers in the Commercial Bank ; for we know that, in the estimation of capitalists, the tax was regarded as fixed; and that the charter, on whatever subject it spoke, contained the unalterable terms on which the capitalist could rely, in making up his mind to become a corporator.
 

 The sense in which the sovereign speaks constitutes the meaning of his language; and it would, in substance and effect, make the State to repudiate her engagements, to give to her language, although susceptible of it, a meaning in which she neither intended to be, nor was, understood.
 

 Ho bank could be established in the State with a reservation of the power of unlimited taxation.
 
 Here
 
 there would be no guard against destruction; because, there being no constitutional requirement for a uniformity of taxation, a few classes of subjects may be selected for raising the entire revenue ; and we know that banks would be placed in front of the heaviest exactions. The present Bank of the State rejected the late charter on that ground. And it is but in very modern times, as the necessity for increased taxes has sprung upon us, that financiers have multiplied the properties of a bank in order to find sources of revenue. A bank is the only being whose every property is deemed the fit subject of taxation. "When trades are taxed, the profits are excused. Ho one thinks of taxing the occupation of the farmer, his land, and his profits. To tax a franchise is to tax the profits; to tax bank capital is to tax the profits; a tax on individual shares is a tax on the profits. All is a tax on the profits but in one case, and that is when none are made. A tax on the
 
 *403
 

 capital,
 
 with, an exemption of
 
 all further tax on the capital,
 
 is, in judicial refinement, a mere mockery. Formerly it meant something, but now it would be a mere trick of the sovereign to allure and deceive.
 

 If such construction is made applicable to banks already chartered, both as to the tax and denomination of the notes, the people are deceived. Will it be answered
 
 %
 
 Appeal to the Legislature. This admits the error of construction. That is, that the language does not embrace the contract.
 

 The distinction is admitted between what is of the contract and what is not. A corporation enj oys many privileges which are not the subject of the contract, merely because they are tolerated. All these are fit subjects for legislative control. As if three are incorporated for ten years, with a capital to buy and sell liquors. If there is no law restraining the measure of retail, the corporation may sell by the gill; but, assuredly this toleration is no part of the
 
 contract;
 
 and the sovereign may well abate the nuisance of retailing, and limit the quantity to a quart. But if the charter should provide that the company should not sell
 
 less
 
 than a quart, is not this an implied grant to sell by that measure ? So of the size of the bills, and so of the tax ; because, as is said in the case of the Providence Bank, the subjects were a matter of bargain and contract.
 

 Battle, J.
 

 The Act which incorporates “ the President and Directors of the Commercial Bank of Wilmington,” (act of 1846, ch. 4,) after conferring upon it the usual powers, privileges and immunities of a bank, with a capital stock of $300,000, provides, in the 12th section,
 
 “
 
 that the President or Cashier of said bank shall annually pay into the treasury of the State, twenty-five cents on each share of said capital stock which may have been subscribed for and paid in ; and the first payment of the said tax shall be made twelve months after the said bank shall have commenced operations.” The Revised Code, chapter 99. section 20, imposes a tax of three cents upon every dollar more than six dollars of net dividend
 
 *404
 
 or profit upon money- Tested “ in stocks of any kind, or in shares of any incorporated or trading company, whether in or out of the State ; and herein shall he included all hank dividends, bonds and certificates of debt of any other State or country, or of any public corporation created by this or any other State.”
 

 The question presented by the pleadings in this case is, whether the Legislature had the power, after the reservation of twenty-five cents on each share of the actual capital stock of the bank, to impose an additional tax on the dividends received by the individual stockholders.
 

 The counsel for the defendant contends that it had not, and his argument is, that the grant by the Legislature of the bank charter, created a contract between the State and the corporation ; that, by a fair construction, one term of that contract was that the bank should pay into the public treasury twenty-five cents on each share of its actual capital stock, in consideration of which no other or further tax should ever be imposed upon it, or upon the dividends or profits of any of the individual members who composed it; and that the Constitution of the United States prohibits the State from passing any law to impair the obligation of the contract, or of any essential part of it.
 

 We admit that the grant by the Legislature of a charter to a banking corporation, creates a contract between the State and the corporation, which brings it under the protection of the Constitution of the United States. This conservative principle has been repeatedly recognised by this Court,, in decisions, of which it is necessary to refer only to the cases of
 
 Mills
 
 v.
 
 Williams,
 
 11 Ire. Rep. 558, and
 
 State
 
 v.
 
 Matthews,
 
 3 Jones’ R. 451. The same protection which is extended to the whole contract must be extended to every essential part of it; and if it be a term of the contract that the State shall not impose any other tax upon the capital stock of the bank, or upon the dividends or profits of the stockholders than that which is expressly mentioned in the charter, then, we freely admit that the clause of the Revenue Act, to which we have referred, is
 
 *405
 
 inoperative- in its application to the holders of stock in the Commercial Bank of Wilmington. The question, then, ceases to-he one of constitutional power, and becomes one of construction merely. The question which has-been thus presented,' has, in late years, been, so-often, the subject of discussion and decision in the Supreme Court of the United States, and in the Courts of the several- States, that it would be a work of supererogation to go into- an. extended argument upon it. We shall confine ourselves to a brief enunciation of the principles upon which our judgment,.in the-present case, is founded.
 

 It is now a well settled rule-of construction, that “ the grant of' privileges and exemptions to a corporation-, are strictly construed against the- corporation, and in favor of the public. Nothing passes but what is granted' in clear and explicit terms. And neither the right of’taxation nor any other power of sovereignty which the community have an interest in preserving undiminished, will be held to be surrendered, unless the intention to-surrender is-manifested in words too plain-to be mistaken.”
 
 Ohio Life Insurance and Trust Company
 
 v. Debolt, 16 How. (U. S.) Rep. 435;
 
 Billings
 
 v.
 
 The Providence Bank,
 
 4 Peters' Rep. 561;
 
 Charles River Bridge
 
 v.
 
 The Warren
 
 Bridge, 11 Peters’ Rep. 545. It cannot be denied that the taxing-- power is one of the highest and most important attributes of sovereignty. It is essential to the establishment, and the continued existence, of the government. Without it, all political institutions would be dissolved, the- social fabric would be broken- up, and civilization would relapse into barbarism. No gpvernment can, then, divest itself, altogether, of a power which is essential to its existence ; it cannot commit political suicide; but it is conceded that it may, by contract for an adequate consideration, bind itself, for a longer or shorter period, not to exercise its taxing-power at all, or not beyond a certain extent, upon certain persons or things. This is, however, often a dangerous restriction upon its power, because the necessities of the government cannot always be foreseen. In the changes and chances
 
 *406
 
 of time and tilings, those who have charge of the administration may have need of all the possible resources of the conn-try to save it from great disaster, if not from ruin. These considerations force upon the mind the propriety, nay, the absolute necessity, of the rule that every grant from the Legislature, by which the integrity of the power to raise revenue is impaired, must be construed strictly in favor of the public, and against the grantee. Let us apply this rule to the case before us. The Legislature has granted a charter to the bank in question, in which there is a stipulation for a certain tax to be paid by the officers of the bank, upon each and every share of its actual capital stock, into the treasury of the State. There is no express provision that no other or higher tax shall ever be exacted; but it is contended that there is an implied one to that effect. Why should there be ? It is certainly not so in cases very analogous to this. A citizen takes a grant from the State for a tract of land and pays the stipulated price. He has immediately to pay a tax of twelve cents upon every hundred dollars’ value of it, by the general revenue law of the State. That is precisely the same as if a tax of that amount were reserved in the grant. The State cannot violate its contract contained in the grant, any more than it can violate its contract involved in the grant of a bank-charter; and yet, whoever doubted that the Legislature may, from time to time, increase the tax upon the land? The same may be said of any taxable personal chattels which the State may sell to an individual. Why should money vested in a corporation be more favored? It would be difficult to assign a good reason for the preference.
 

 But, if it be admitted that the capital stock of the bank is, by its charter, exempted from additional taxation, it by no means follows that the dividends or profits of the individual stockholders shall be exempt. Bank stock, or stock owned by individuals in a bank, is a different thing from the capital stock of the bank. By the first is meant
 
 “
 
 the individual interest in the dividends, as they are declared, and a right to a
 
 jpro rata
 
 distribution of the effects of the bank, on hand at the
 
 *407
 
 expiration of the charter. The capital stock 'of the hank is the •whole undivided fund paid in by the stockholders, the legal right to which is vested in the corporation, to be used and managed in trust for the benefit of the members"
 
 Union Bank of Tennessee
 
 v.
 
 The
 
 State, 9 Yerg. Rep. 490. A tax oh the first is very different from one on the latter, and the property is listed and the tax paid in a very different manner. The tax on the dividends of bank stock varies-, of course, with the amount declared by the bank, and received by the stockholders. The dividends are listed for taxation, and the tax is paid by the owners of the stock to the sheriff in the counties of their residence. The tax on the capital stock is paid, irrespective of profits, by the officers of the bank, directly into the public treasury. How a provision in a bank-charter for a tax upon one only of two such different subjects of taxation, can be construed into an entire exemption from the other, it is difficult to conceive-. It is a more reasonable conclusion that the Legislature intended to reserve for future emergencies the power to raise revenue from that subject of taxation about which it was silent-. And this conclusion is strengthened by the reflection that the reserved subject is one upon which the taxation 'cannot press very heavily. It is to fall on profits ; it diminishes when they grow lighter, and is withdrawn altogether when they cease. Such is not the case on many other subjects of taxation. Land and slaves must contribute to the support of the public burdens, whether their owners sigh over empty granaries, or rejoice over barns filled to overflowing-. Our conclusion, that the exemption of the capital stock of a bank from any greater impost than that which is specified in its charter, does not exonerate the dividends of the stockholders from such taxes as the Legislature may, from time to time, think proper to impose, is expressly decided in the case from Tennessee, to which we have referred. "We have shown that it is directly within the rule of construction extracted from Chief Justice Tandy’s opinion in the case of the
 
 Ohio Insurance and Trust Company
 
 v.
 
 Debolt.
 
 Being thus supported by reason, and confirmed by authority, we
 
 *408
 
 state it witb confidence as the law of this and all similar cases. The demurrer must be overruled, and the defendant ordered to put in an answer..
 

 Per Cubiam. Demurrer overruled»