JOHN A. TAFT, Trustee, *v.* HARTFORD, PROVIDENCE AND FISHKILL RAILROAD COMPANY.

The holder of "preferred and guaranteed stock" in the H., P. & F. R. R. Co. being entitled to preferred and guaranteed dividends, at the rate of ten per cent. per annum, payable semi-annually, before any dividend shall be paid on other stock of said company," is entitled to that sum, payable only out of the earnings of the company which are legally applicable to the payment of dividends.

ASSUMPSIT, for the recovery of the amount of dividends, at ten per cent. per annum, for eight years, upon four hundred and

two shares of the capital stock of the defendant corporation, (as the plaintiff argues,) "not as arrears of dividends unpaid, but as their equivalent, as *damages*, for the non-performance of the defendants' contract that they should be paid." The plaintiff's declaration contained, besides a general count, a special count upon each of some fourteen parcels of stock, assigned and transferred to him by the original holders,—these several counts varying only as regards names and amounts. Each contained the averment that the "defendants did guaranty and promise to the shareholder or his assigns, or the holders of the shares or any of them, to pay him or them preferred and guaranteed dividends, at the rate of ten per cent. per annum, semi-annually, before the payment of any other dividends on other stocks of said company, on each of said shares of guaranteed and preferred stock, subject to the conditions following, to wit: that at any time after the 1st day of April, 1865, said defendants reserved, and would have the right to redeem and extinguish, the whole or any part of said shares of said preferred stock, by giving therefor, to the holder, on the books of the company, the par value of one hundred dollars for each and every one of said shares, and that, at any time after the said 1st of April, the holder of said preferred stock should have the right to demand and receive, for the whole or any part thereof, one hundred dollars for each share, and all right to future dividends on said preferred stock that should have been so paid for or redeemed, should thereafter cease and determine." Each contained a further averment, that the defendants, on the 4th of April, 1865, did pay to the holder a first dividend, pursuant to contract, and, on the 4th of October, 1865, a second; but that they, "since said 4th of October, 1865, had not paid any dividend on said stock or any part thereof." The conclusion of each count was to the effect that the holder, in March, 1864, assigned and transferred his stock "to the plaintiff, to have and to hold the same subject to the conditions before recited; and thereupon · the defendants became liable and promised the plaintiff to pay him the sum or sums then due and unpaid on the shares thus assigned, for dividends guaranteed and promised to be paid as aforesaid, by the

defendants, to the holder on request." The defendants pleaded the general issue, and, by agreement, a trial by jury was waived, and the case submitted to the Court upon the pleadings and a statement, in writing, of the facts.

Among the conceded facts, under this agreement, were these, to wit:—That the said stock, (being parol of five thousand shares issued), was legally made and issued by the corporation; that the original subscribers therefor paid the par value of one hundred dollars for each share; that the plaintiff, as transferree of the shares specified in his declaration, was entitled to all the rights of the original holders; that two dividends, and only two, as alleged in the declaration, had been paid by the defendant corporation; that the corporation at and before the issuing of said stock, had borrowed on seven per cent. bonds, secured by mortgages, $1,359,750, and might, according to the expenditure then made upon the road, borrow $458,000 more, upon a further issue of similar bonds, under the like mortgage security; that at the time of creating said new stock the defendant corporation had a floating debt of $772,000, requiring for the payment or security thereof and the completion of its railroad, (over and above said $458,000 in its bonds to be issued, and over and above all other its available means except the proceeds of said new stock, as then estimated), more than five hundred thousand dollars, and as the event proved, more than eight or nine hundred thousand dollars; that the defendant corporation has never had the means of paying said floating debt and has never paid the same, a part thereof having been converted into said seven per cent. bonds secured by mortgage, and the other part, being about $211,574, remaining unsecured, the corporation having issued all the bonds under said mortgage security which it has lawful authority to issue; that the amount of said seven per cent. mortgage bonds issued and outstanding before and at the commencement of this suit was $2,055,500; that the mortgages of the corporation given to secure the payment of said bonds are upon the franchises of the corporation both in Rhode Island and Connecticut, and all other corporate property of the company, whether vesting in the corporation at the date of said mortgages,

or to be thereafter acquired ; that said corporation, prior to the commencement of this suit, had never been able, for the want of funds and credit for that purpose, to construct proper and convenient depots and station houses at either termini or along the line of its railroad, and has suffered great inconvenience from the same cause, for the want of other accommodations for its business ; that the income from the earnings of the railroad of said corporation proving insufficient to pay the semi-annual interest falling due upon its said mortgage bonds on the first day of January, 1858, and remaining unpaid, the trustees for the holders of said bonds to whom the mortgages for their security had been given, thereupon, to wit, on the ˙ day of January, 1858, took possession of said railroad, and from thence to the commencement of this suit, have continued in possession thereof, running and operating the same for the benefit of the holders of said bonds ; and that the income thereupon, prior to the commencement of this suit, had proved insufficient to pay the interest accruing on said bonds for the time that the trustees had been in the receipt thereof, and that the interest, prior to the commencement of this suit, overdue on said bonds and remaining unpaid, without any means in the hands of said corporation or of the said trustees for the payment of the same, amounts to more than one hundred and fifty thousand dollars."

Appended to the statement of facts, were several exhibits, comprising a full record of the proceedings of the corporation, and of its directors, in relation to the stock in question. At a meeting of the stockholders, October 25, 1854, the following votes were passed :—

" *Voted*, That five thousand shares of one hundred dollars each be and the same are hereby created and added to the capital stock of this company, and that the same be a preferred and guaranteed stock, entitling the holder thereof to preferred and guaranteed dividends equal to ten per cent. per annum, payable semi-annually. And no dividend shall be paid on the remaining shares of said stock until such semi-annual dividends, at the rate of ten per cent. per annum, above mentioned, shall first have been paid on said guaranteed or preferred stock. *Provided*, that

said preferred stock shall be issued on the express condition following, viz. : that at any time after the first day of April, 1860, or after the first day of April, 1865, as the directors shall decide, said company reserve, and shall have the right to redeem and extinguish the whole or any part of said preferred stock, by paying to the holder thereof, on the books of said company, the par value of one hundred dollars for each and every share held by him, her or them, and that, at any time after the time or times fixed by the directors, any holder of said preferred stock shall have the right to demand and receive for the whole or any part thereof, one hundred dollars for each share, and all right to further dividends on said preferred stock, that shall have been so paid for or redeemed, shall thereafter cease and determine.

" *Voted*, That the guaranteed dividend of ten per cent. on such preferred stock, to all subscribers who pay for the same in money previous to said first day of April next, shall begin to accrue on and from the day when the money for said stock shall have been paid to said company."

At a meeting of the board of directors, on the 30th of October, in pursuance of instructions from the company, the following votes were passed :—

" *Voted*, That preferred stock be offered to the stockholders of this company on the terms and conditions fixed by the corporation, and completed by vote of their directors, as set forth in their respective votes and substantially explained in the subjoined circular, a copy of which shall be addressed by the Secretary to each stockholder of the company whose place of residence is known to the President or Secretary, and a like copy published in at least one daily newspaper printed in Providence and Hartford.

" CIRCULAR.

OFFICE H., P. & F. R. R. Co.,      }
HARTFORD, October 30, 1854. }

" *To the Stockholders of said Company :*—

" At a corporate meeting held at Hartford, on the 25th day of October, 1854, said company created and added to their capi-

tal stock, five thousand shares of guaranteed and preferred stock of one hundred dollars each, entitled to semi-annual dividends at the rate of ten per cent. per annum.

" In accordance with, and referring to, the votes passed at said meeting, the directors offer said preferred stock to stockholders, to be subscribed for, either at the office of said company in Hartford, or at the office of the Hon. William W. Hoppin, Treasurer, in Providence, or by returning to either office the annexed form of subscription, duly filled up and signed, viz. :—

" 1. One share of said preferred stock for every three shares of fully paid up stock of said company, standing in the name of any stockholder on the first day of December, 1854, which preferred stock must be subscribed for in writing on or before said 1st day of December, and not afterwards.

" 2. Every subscriber to the preferred stock must, at the time of subscribing, elect and specify in writing, as he has the right to do, whether he will have the same made redeemable at par, and the par value thereof demandable at any time from and after the 1st day of April, 1860, or at any time from and after the 1st day of April, 1865. After the time so specified shall have expired, and after payment of the shares at par shall have been made by the company, dividends on said preferred stock shall cease to be payable.

" 3. Subscribers to preferred stock must either pay cash, or give their notes for the amount, on or before the first day of December next.

" 4. Stockholders, who fail to subscribe, or to either pay cash, or give their note for the amount, on or before December 1st, 1854, forfeit their right to take preferred stock.

" 5. Notes for preferred stock must be made payable on, or at some specified day before, April 1st, 1855, at the subscriber's option.

" 6. Guaranteed dividends, at the rate of ten per cent. a year, will commence from the time when the money is actually paid for said preferred stock.

" If a note given for preferred stock is not paid when due, the stock may be sold by the company, and the net proceeds in-

Taft, Trustee, *v.* Hartford, Providence and Fishkill Railroad Co.

dorsed on such note. If it sells for more than the amount of note and costs, the excess is forfeited to the company.

"Each stockholder of three or more fully paid up shares is requested to call at either of said offices, on or before December 1st, 1854, and there subscribe to the preferred stock, and pay cash or give his note for the amount, or he may fill up, and sign the annexed form of subscription, and also fill up and sign the annexed note, and return them both by mail, to the office of said company, or to the office of said Hoppin, at any time on or before December 1st, 1854.

E. M. BRIDGMAN, *Secretary.*

"*Voted,* That the subscriptions to said stock be in form following, viz. :—

"Subscriptions to the preferred and guaranteed ten per cent. stock, of the Hartford, Providence and Fishkill Railroad Company, created and added at a corporate meeting of said company, held at Hartford, October 25, 1854.

"The undersigned hereby agree to take and pay for, according to the votes of said company, and of their directors, to carry out the same, as substantially set forth in their circular dated October 30, 1854, the number of shares affixed to their respective names. Also to have said shares redeemable at par, and the par amount thereof demandable from and after the first day of April, 1865.

"*Voted,* That the certificate for preferred stock be in form following, and that the forms for notes to be given, and for receipts for cash payments, and for notes taken, now submitted to the board, are approved.

[FORM OF CERTIFICATE.]

"*No.　Preferred and Guaranteed* 10 *per Cent. Stock.　Shares.*

"HARTFORD, PROVIDENCE & FISHKILL RAILROAD CO.

[*Redeemable,* 1865.]

"BE IT KNOWN, That　　　entitled to　　　shares in the preferred and guaranteed stock of the HARTFORD, PROVIDENCE AND FISHKILL RAILROAD COMPANY, on which one hundred

dollars, on each share, have been paid, subject to the provisions of the charter, and the by-laws of the corporation, the same being entitled to preferred and guaranteed dividends, at the rate of TEN PER CENT per annum, payable semi-annually, before any dividend shall be paid on other stock of said company; and being redeemable by the company, and the par value thereof demandable by the holder of the same, from the company, at any time after April 1st, 1865.

" Transferable only at the office of the company, in Providence, by the said      or      attorney, upon surrender of this certificate.

" Dated at Providence, this      day of      185

*President.*

. *Secretary.*

[FORM OF RECEIPT FOR NOTE.]

Providence,      1854.

" $      PREFERRED AND GUARANTEED STOCK.      *Shares.*

" The HARTFORD, PROVIDENCE AND FISHKILL RAILROAD COMPANY have received of      promissory and negotiable note, dated      1854, and payable      1855, for      dollars, which when paid is to be in full for      shares of the ten per cent. preferred and guaranteed stock of said company.

" If said note is not paid at maturity and according to its tenor, said stock may be sold, and the net proceeds, if less than the note, to be endorsed on the note; if more, the maker of said note shall forfeit all claim to such excess.

[FORM OF RECEIPT FOR CASH.]

Providence,      1854.

" $      PREFERRED AND GUARANTEED STOCK.      *Shares.*

" The HARTFORD, PROVIDENCE AND FISHKILL RAILROAD COMPANY have received of      dollars, in full for      shares of the preferred and guaranteed stock of said company, and for which a certificate will be issued on surrender of this receipt, after the 10th of December next.

Taft, Trustee, *v.* Hartford, Providence and Fishkill Railroad Co.

[FORM OF NOTE FOR PREFERRED STOCK.]

" $                              Providence,        1854.

" On the.      day of      next, value received,      promise
to pay to the order of the HARTFORD, RROVIDENCE AND FISH-
KILL RAILROAD COMPANY, at        Bank in Providence
dollars."

The votes of the directors, declaring the aforesaid two divi-
dends upon the stock in question,—the first passed March 14,
1855, the second September 19, 1855,—were as follows :—

" *Voted,* That a dividend, at the rate of 10 per cent. per annum,
from the time of payment to the 4th day of April next, be, and
the same is hereby declared to the holders, on the first day of
April next, of each and all shares of the preferred stock of this
company, on which the full amount of one hundred dollars
shall have been paid prior to said 4th day of April, payable on
the 10th day of April next.

" *Voted,* That a dividend be, and the same is, hereby declared
at the rate of 10 per cent. per annum for the six months ending
October 4th, 1855, on all shares of preferred stock paid for in
full on or before April 4th, 1855, and a pro rata dividend, at the
same rate per annum, on all shares of said stock paid for in full
since the 4th of April 1855, from the respective dates of pay-
ment for such several shares to the 4th of October, 1855, said
dividend to be payable on and after the 20th of October next,
to the registered holders of such shares on the 4th day of Octo-
ber next."

*Durfee, with whom was Eames, for the plaintiff:—*

The plaintiff claims that the defendant corporation guaranteed
or stipulated the payment of semi-annual dividends on his shares
of stock specified in the declaration ; and that it has not made
good this guaranty or stipulation. This suit, the Court will ob-
serve, is not for arrears of dividends unpaid, but for their equiva-
lent as *damages* for the non-performance of the defendants' con-
tract, that they should be paid. The defendant corporation main-
tains that it never entered into such a contract. The decision of
the question will depend, of course, on the terms. on which the
stock was issued. These terms, we learn from the subscription

paper, the circular issued by the directors, and the votes of the corporation. " Preferred and guaranteed stock, entitling the holder thereof to preferred and guaranteed dividends equal to ten per cent. per annum, payable semi-annually." Can this language be understood to mean simply that a stockholder should be entitled to the specified dividend, in preference to the other stockholders, only in case the net earnings of the road should afford means to make such dividends,—otherwise, that the company were to be absolved from all liability to make good the default or deficiency ? The word " preferred " creates a preference in favor of the holders of the new issue ; and in addition gives them a lien on the net earnings of the road which a court of equity will protect, in case of an attempt to misapply them. But the company have used the additional word " guaranteed," probably with the express purpose of negativing the supposition, that if dividends were not earned, the company was to be under no obligation to pay them or their equivalent to the holders of the new stock. The company were in a pressing strait for money, and therefore made a tempting offer, and to express their meaning selected that aptest of words " guaranteed." The word guarantee, though most usually employed to designate a contract, by which one person becomes answerable for another, is not unfrequently employed to express an unusually emphatic assurance of a party in his own behalf, as in section 4, article iv, of the Federal Constitution. Will the Court say that a word which is constantly selected by the company to *characterize* and *denominate* the subject to which it applies, is simply tautological? The company in one instance say, " *Voted,* That the guaranteed dividend of 10 per cent.," &c., &c., and if the preceding vote did not completely negative the idea that the payment was to be contingent on the earnings, this vote does so, most assuredly. Again : The circular issued by the directors is free from ambiguity in this regard. Could the company have supposed that the subscribers for stock would expurgate or ignore the word " guaranteed," or would interpolate after it, the incompatible qualification, " if the net earnings of the road suffice for the payment of such dividends ? "

The plaintiff claims, 1st, that the holders of the new stock should have a preference over other stockholders for the payment of the guaranteed dividends out of the net earnings of the road, which is tantamount to an equitable lien on such earnings in their favor ; and, 2d, that the company guaranteed, or solemnly stipulated, the payment of said dividends in any event, and whether the net earnings should suffice for it or not. Now, in construing the contract, the Court will look back of the writings that evidence it, into the circumstances in which it originated, and put themselves as nearly as may be, in the situation of the parties to it. This done, it will be apparent that the contract, as construed by the plaintiff, was one which the company was constrained by its necessities to make, and that only by an offer, as tempting to the capitalists as was this, could the company have obtained the needful aid. To test the point, suppose a case. Suppose that, for ten years after the issue of the new stock, the company barely make enough to pay interest and expenses ; and that at the end of ten years they redeem the new stock and the road becomes prosperous. According to the view which we are combating, the subscribers are not entitled to dividends for the ten years that are.gone, because none were earned, and they are not entitled to dividends for the future, because they have ceased to be stockholders. Thus, after lifting the road out of the slough in which it was sinking, and putting it on the way to success, the moment success begins to be attained, they can not only be excluded from participating in the fruits of it, but also be denied any remuneration for aiding the company to a position where they could reap them. Such, if we are not misinformed, is the theory of our adversary ; we trust the Court will not sustain it. That theory is an after thought ; the company itself, during the first year after the new stock was issued, practically gave the contract the construction we are contending for, by paying two dividends, not out of the net earnings of the road, but probably out of the money paid in for the stock on which the dividends were declared. Herein the directors either fulfilled the guaranty or contract of the com-

pany, or committed a gross violation of duty. We say they did the former.

*Currey, with whom was Blake, for the defendants:*—

This is an action for the recovery of dividends upon shares in the capital stock of a corporation. The declaration contains several counts, one of which is in general indebitatus assumpsit, the others are in special assumpsit.

*First,* of the count in general assumpsit, which is in the most general form, without alleging either that dividends have been earned, made or declared, or whether they are claimed on the preferred or common stock.

I.  No dividends having been made on either class of stock in the defendant corporation, the count in general assumpsit cannot be maintained. This count always supposes a debt; but the relation of debtor and creditor, in respect of dividends, cannot exist between a corporation and its stockholders, unless a dividend has been declared. *Maryland v. Baltimore and Ohio R. R. Co.* 6 Gill, 363, 385–8. The signification of the word dividend itself precludes the plaintiff from recovering on this count, without proof that a dividend has been made and declared. "Dividend," says Bouvier, "is a division of the profits arising out of bank or other stocks." Redfield on Railways, p. 597, § 240. Now it is agreed that no dividends demanded in this suit have been made or declared, and it is clear, therefore, that the general count is not sustainable. (6 Gill, 386–8, *supra.*) There may be profits on capital without dividends. Profits may give a right of dividends, but the remedy for this right is not either general or special assumpsit. There is nothing in this company's charter, or in the general rules of law, requiring the corporation to declare dividends of its profits, except as its directors, or a majority of its stockholders, may deem expedient. 6 Gill, 380–2, *supra; Stevens v. South Devon Railway Co.* 12 Eng. L. & Eq. 237. That the condition of the company has never been such as to warrant the declaring of a dividend, is manifest from the facts agreed.

II.  The special counts being specifically for dividends, though founded on a special agreement for the payment of divi-

dends, are equally incapable, with the general count, of being sustained, for want of alleging and proving that dividends have been earned and declared. These counts aver, in substance and effect, "that the defendants, promised the holders of said shares, dividends thereon at the rate of ten per cent. per annum, semi-annually, before the payment of any other dividends on other stock of said company." This is the whole effect of these special counts, so far as they relate to dividends. The condition set out in them can have no influence on this suit, unless indeed its manifest illegal character shall be held to avoid the entire contract. But for the present, considering these shares as well issued, and the contract for preferred dividends as valid, let us enquire what that contract is? We contend that there is nothing in it which takes the case out of the general principle, that no action at law will lie for dividends unless they have been declared, or at most without alleging and proving that the corporation has funds which are applicable to dividends, and has contracted to pay them on that contingency. Neither this nor any other corporation could lawfully contract an obligation to pay dividends to its stockholders, while its funds are required for the payment of its debts. The plaintiff sues for dividends on *capital stock,* for as such he invariably designates these shares. Now if stock for one purpose, they must be stock for all purposes. They may have privileges attached to them, as against other shares, but not as against creditors or the policy of the law. In the vote of the company, creating shares, there is nothing in the nature of an undertaking to pay these privileged dividends at all events; "the remaining shares of said stock" spoken of, were as three to one of the proposed new stock. The effect of the vote, therefore, was to pledge the entire profits from the combined capital of twenty thousand shares, for payment of these privileged dividends upon such part of the new shares as might be issued. This was an offer "tempting" enough; and it could not reasonably have been understood otherwise than as we contend. In the condition of the company's affairs, as shown by the statement of facts, it could offer or pledge nothing more, than was, in our view of the con-

tract, offered and pledged. A stipulation to pay these privileged dividends, at all events, would have been as well illusory and deceptive, as inoperative in the law, nugatory and void. The promissor and promissee in this case, were, in some sort, one and the same party. The company's stockholders passed the vote; would they have looked to any other source for dividends than the surplus earnings of the road above current expenses and existing liabilities? We maintain that this suit is expressly for dividends alleged to be due and unpaid. This is the legal import and effect of the action; and we say that it cannot be sustained, because no dividends have been declared, and because there is no fund applicable to the payment of dividends. And further, we say that a contract by a corporation to pay dividends to its stockholders, however positive and particular, is always subject to the condition that it has funds from which dividends can lawfully be made, and we say there is nothing in the contract declared on which makes it an exception to this principle.

III. But could the suit, however framed from this contract, be maintained as upon a guaranty? Where is the guaranty? Who is the guarantor? The counsel say: "If guaranteed, somebody must have guaranteed it, and who, if not the company?" We answer, the company is the original party, and could not, therefore, be the guarantor. The guaranty of a party for himself is something novel, originating in the desperate strait to find something to support this extraordinary action for dividends, or damages for dividends. The citation from the Federal Constitution lends no support to this admittedly unusual use of the word guaranty. This suit, we submit, can derive no support from the fanciful idea of its resting upon a guaranty. What then is the meaning of the defendant's contract, and how is it to be construed? Happily we are not without judicial light to guide us in our interpretation of it. Analogous contracts, or rather the same kind of contract, expressed in substantially the same terms, between railroad corporations and their stockholders, have been submitted to judicial decision. *Stevens* v. *South Devon Railway Company*, 12 Eng. L. & E. 229–37, is a

case in point in relation to guaranteed dividends. There we find a judicial construction by the Vice Chancellor of a resolution creating "guaranteed dividends" nearly identical with the vote to be construed in this case. That construction, as applied to this case, is accordant with our views. See, also, *Sturge* v. *Eastern Union Railway Company*, 31 Eng. L. & Eq. 406. The payment of dividends, common or privileged, according to these cases, is a qualified or contingent obligation, always depending upon the ability of a corporation to pay them consistently with its higher obligations.

IV. The condition annexed to the vote creating the preferred stock is cited to show that the arrears of dividends are also to be treated as a debt, or as a cause of action for damages, because of their non-payment. We, on our part, deny that this condition has, or can have, any legal operation or effect whatever. The provisions of the act of the Assembly contain no authority for it. Sch. June, 1854, p. 33. The circumstances of the company made an increase of its capital necessary; and the Assembly authorized an increase of the stock, as *stock*. The company under the act had no power to create shares different in character or quality from the original shares. The act did, however, confer a power of contracting for such specific, preferential dividends on the new shares, as the stockholders might determine on. The construction gives a consistent meaning to all parts of the act, and is in precise accordance with the conclusions of the court in the cases cited from Eng. L. & Eq. Rep. Finally, the construction contended for by the plaintiff's counsel, would be against the general policy of the law and fraudulent as to creditors. The corporation was created for public purposes. All its powers are privileges conferred by law; and these powers it may not use in a manner to defeat the objects of its charter, to involve itself in hopeless bankruptcy, or to defraud its creditors.

*Eames, for the plaintiff,*—in the close :—

I. The defendants, in their first point, insist that their action is strictly for the recovery of dividends on shares of the capital stock of the corporation, and that such action cannot be sustained either upon the count in general assumpsit, or upon the special

counts. The objection to the general count raises a question of evidence, and that to the special count involves a question of law. It is agreed in this case that no dividends, for the equivalent of which this action is brought, have been either earned or declared by the corporation ; and if the reasoning of the defendants is correct, that in indebitatus assumpsit for dividends or their equivalent, it is necessary to prove that such dividends, or their equivalent have been made and declared, the plaintiff in this action, upon that count, has failed to sustain his case by the requisite proof. There are special counts, and these, the plaintiff contends, cannot be sustained without alleging that dividends have been earned and declared. A sufficient answer to this is, that a want of a material averment in the declaration raises a question of law, not open to inquiry at this stage of the case, under a plea of the general issue. The plaintiff should have demurred. But whether the special counts are or are not defective, in this respect, depends upon whether the action is specifically for the recovery of dividends, or, as claimed by the plaintiff, is for the recovery of a sum of money which would have been paid to the plaintiff in dividends, if the defendants had fulfilled their guaranty and promise as evidenced by the contract between the parties. It may be necessary, in an action for dividends, to aver and prove that dividends have been earned and declared. But as no such averments are made in the special counts, it is reasonable to suppose that these counts are not for the recovery of dividends, but for the non-performance of the guaranty upon the special facts therein alleged. Whether the facts particularly set forth in the special counts are sufficient to support the action, depends upon the true construction of the contract which is the subject of the action. The action is, upon the facts specially set forth, for a breach of the defendant's guaranty that dividends should, in any event, be paid, whether earned or declared, or not ; and the counts, we submit, are unobjectionable in form or substance.

II. The defendants' next point involves the true construction of the contract between the parties. They claim that the agreement was to pay the stipulated dividends, provided the net

earnings of the road should be sufficient therefor. The argument, in this regard, rests upon the construction which they put on certain words used in the votes, circular, and subscription, which comprise the contract. The words relied upon by the defendants, as sustaining their construction of the agreement, are "*capital stock,*" "*dividends,*" *guaranteed and preferred.* In ascertaining the true import of these words, it is proper to enquire who the parties to the contract are—what is the subject of it—and what the defendants, in the sense of these words as used and understood, agreed to do? The parties to the contract are the subscribers to the new shares and the defendant corporation. Their relation to each other is that of separate and distinct parties, as much so as if between one individual and another. The subject to which the contract relates is the new shares to be issued in accordance with the votes and circular of the corporation. What the agreement or contract was, is the point of inquiry. The defendants, construing certain words to suit their purposes, maintain that the agreement was simply to pay the specific dividends agreed on before paying any dividend on the other shares,—claiming that the *new shares* are of the same character as the original shares,—and the dividends agreed to be paid on said new shares of the same character as dividends on the original shares. We maintain, on the contrary, that the new shares were wholly unlike the old, as shown by the vote, circular and subscription, wherein these are denominated, " preferred and guaranteed ten-per-cent. stock," to cease to be at the expiration of ten years. And, as to the word "dividends," we maintain that it was not used by the parties in its ordinary sense, as signifying a certain proportion of the earned profits of the road; but as signifying that the holders should be entitled to receive, in value, what was *equivalent* to ten per cent. on the amount which they had paid from *the time of the payment;* and that such is the true import is made certain by the sixth vote of the corporation, " that the guaranteed dividends of ten per cent. shall begin to accrue on and from *the day* when the money for said stock shall have been paid to the company ; " and also, by the sixth item of the circular, that " guaranteed dividends, at the

rate of ten per cent. a year, will commence from *the time* when the money is actually paid for the said preferred stock." The expression is equivalent to the word interest at the fixed rate. The meaning is that dividends or interest, at that rate, should be preferred and guaranteed. The parties so understood the contract, as is conclusively shown by the payment and receipt of the first two dividends, from some other fund than profits earned or ordered to be distributed as dividends proper. This construction substantially accords with that of the Vice Chancellor in *Sturge* v. *the Eastern Union Railroad Company*, cited by the defendants. The word "guaranteed" does not admit of the construction placed upon it by the defendants. A guaranty, in the legal sense of the term, is, no doubt, "the undertaking of one person for another." But this action is upon a *contract* of guaranty. And it is far from true "that the law recognizes no other use of the word whatever its various popular uses." It has a meaning that is definite and certain; and when used by the parties to a contract, that meaning is to warrant and make the thing agreed to be done sure. Mr. Redfield, in his treatise on Railways, page 601, § 241, says: "contracts for the guaranty of dividends upon railway stock, as a part of the contract of sale of shares in such stock, are not uncommon." The word was not used by the parties in its strict legal sense; but it was used, and has the meaning as between them, for which we contend. Furthermore, the meaning of the word as applied to dividends, is fixed by its use as applied to stock. The vote of the corporation is that the new shares shall be a *preferred and guaranteed stock*, and that the holders thereof shall be entitled to receive the par value thereof of the corporation, at any time after the first day of April, 1865, on request; and that the holders of the new shares shall be entitled to *preferred and guaranteed dividends*, equal to ten per cent. per annum, payable semi-annually. The word "guaranteed" is here applied alike to stock and dividends. It is the same word, applied both to stock and to dividends; and whatever, therefore, the true import of the word is, as applied to the one, is, also, its true import as applied to the other. Its meaning, as applied to *stock*,

is so certain and distinct, that it is admitted by the defendants in their argument. And the same word, when applied in the same vote to *dividends*, necessarily means that the dividends, stipulated to be paid, should be paid at all events. There can be no answer to this position. The defendants' construction of the words "guaranteed dividends" is not at all aided by their elaborate argument, aiming to show that the subscribers to the new stock expected to be paid out of the net earnings of the road. But even if the word "dividends," as used in connection with the word "guaranteed," means, in its true import, dividends out of the net earnings of the road, as claimed by the defendants, the defendants do not advance a step in the defence to the action. If the dividends were to be paid out of the net earnings of the road, they were, nevertheless, guaranteed or stipulated to be paid out of such net earnings. In other words, the guaranty was, that the net earnings should be sufficient to pay a dividend equal to ten per cent. per annum; and if the result was that such earnings were insufficient for that purpose, there was none the less a breach of the guaranty, on the part of the defendants, that they should be sufficient, for which an action will lie to recover, by way of damages, the amount which the plaintiff would have received if such net earnings had been sufficient to pay the stipulated ten per cent. The words of the contract, "guaranteed stock" and "guaranteed dividends," as used and understood by the parties, had reference to the *quality* of the stock and the amount per cent. per annum which the holders would realize from it. And the guaranty was that the stock was of a quality that would produce ten per cent. per annum, from the day it was paid for until the first day of April, 1865, and that then the stock should not be diminished in value below the par value of one hundred dollars for each share. Redfield on Railways, 601, 602, § 241; *Streuthers* v. *Clark*, 30 Penn. 210. Upon a critical or a merely cursory examination of the phrases employed in their votes, circulars, &c., it will be apparent that the words, upon which the defendants rest their construction of the contract, as used and understood by the parties, are not susceptible of the meaning which the defendants seek to attach to

them. Of the two cases cited by the defendants, from the English Law and Equity Reports, that from vol. 31 seems to us to sustain our position; and having reference to both, we submit, that they were delivered in a court of equity, not in a court of law, and upon a contract neither like, nor substantially like, the contract in this action, and upon facts differing materially from the facts here in proof. We fail to see wherein our construction of the contract militates against public policy, or conflicts with the rights of creditors. The transaction was substantially a loan from the plaintiff to the defendants. The question of interference with the rights of creditors does not arise here, in this action at law.

III. The defendant argues that the company were not authorized by the acts of the legislatures of Connecticut and Rhode Island, in creating the new shares, to annex the condition for their redemption, or their conversion, into a debt, after a period of ten years. The answer to this is, that the said acts authorize the corporation to add to the capital stock a certain number of shares on such terms, at such rates, and with such provisions and guaranties as may be determined on by the stockholders at a meeting called for that purpose, with no limit to the discretion of the stockholders in this respect. The fallacy of the defendants' argument is in assuming that the principal subject of the acts was to add to the capital stock, and in making the subsequent provisions of the acts subordinate to that as the principal matter. If there is any conflict between the former and the latter provisions, the true rule of construction would require that the former should yield to the latter. But there is no such conflict. Manifestly the main purpose was to enable the corporation to raise money to complete their road. But even if the stockholders have exceeded their authority in issuing the new shares with the provision, the corporation is estopped from setting up that excess of authority in defence of this action. To avail themselves of such defence, the corporation is bound to put the subscribers to the new shares *in statu quo.* If the corporation have exceeded their authority they ought not, in justice or in law, while they retain the plaintiff's money, to be

allowed to set up such excess of authority in defence to an action upon their contract. And in any view of the case, if the corporation was not authorized to issue the new shares in accordance with their vote, the contract between the parties was nugatory and void; and the legal consequence is, that the defendant corporation has received and retained the money of the plaintiff from the day of the payment for the new shares until now; and the defendants are liable to the plaintiff, under the money and interest counts, for the amount then paid, with interest thereon, at the rate of six per cent. per annum, from the day of the payment. The true construction of the acts, however, is, that the stockholders were fully authorized to create and issue the new shares upon the terms and with the provisions specified in their vote. And the plaintiff, upon the contract made in accordance therewith, is entitled to recover upon the special counts.

[At the suggestion of the Court, the counsel subsequently submitted supplemental briefs, in support of their respective views.]

*Currey, with whom was Blake, for the defendants:*—

I. The defendants understood that the preference and priority given to the dividends claimed in this suit makes them a perpetual charge upon the entire profits of the company, applicable to dividends, until they are fully paid. See *Corry* v. *Londonderry and Enneskillen Railroad Company,* 7 Jurist, N. S. part i. 508. Also, the vote of the defendant company creating the shares in question.

II. The words "preferred and guaranteed" add nothing to the legal effect of the contract. They affirm nothing,— promise nothing,—undertake nothing. They are, at most, but a representation. Where, in any analogous case, "guaranteed" has been used to express the contract, not otherwise expressed, the courts have put precisely the same construction upon it which this contract would plainly support without it, and no similar case to this can be found in which it has been construed in the proper sense of a guaranty. If we are to give it any force, it is a pledge of a particular fund to a

particular purpose; not a guaranty of the fund, but of the appropriation of the fund. This is all there is in the word, or lawfully may be in it, in its application to income and dividends between corporations and their stockholders. This construction is well sustained by *Stevens* v. *South Devon Railway Company*, and *Sturge* v. *Eastern Union Railway Company*, already cited. Other cases are yet more to the same purpose. See *Matthews* v. *The Great Northern Railway Company*, 5 Jurist, N. S. part i. 284; *Henry* v. *Same*, 3 Ib. 1,133; *Crawford* v. *The North Eastern Railway Company*, 3 Ib. 1,093; *Corry* v. *Londonderry and Enneskillen Railroad Company*, already cited; 7 Ib. 508, (1860); Law Times, 131 (March to Sept., 1861). The question decided in these English cases appears not to have arisen in the American courts, and the one last cited would appear to be the last of the series in the English courts. In no one of these was the point made that preference dividends, *not earned*, could be recovered as a debt in an action at law. The utmost claim ever made was for *arrears* of dividends, to be decreed in equity, out of the *surplus* earnings, or earnings applicable to dividends. This was contested in all the cases, until finally settled in *Henry* v. *The Great Northern Railway Company*. The manifest hardship of this decision upon the ordinary stockholders induced Parliament, by an act passed July 28, 1863, to put an end to such inequalities in any future public undertakings. 11 Jurist, N. S. part ii. 73–5.

*Eames, for the plaintiff:*—

I. The cases cited by defendant relate to dividends simply preferential over dividends on ordinary shares. The only question raised or decided is, as to the limitation of the dividends to the profits of the current year, or to the future profits for interest in arrear. In their greatest latitude, they do not go beyond a guaranteed preference over dividends on the ordinary shares. The case of *Henry* v. *The Great Northern Railway Company*, is so limited by the express language of the votes and acts of Parliament. 3 Jurist, 1,134–37. In all these cases, perhaps, the only remedy is in equity, because the shares were only entitled to dividends in *priority* to dividends on ordinary shares.

II.  In the case at bar, the holders of the new shares are entitled to dividends which are not only preferred, but also are guaranteed.  The promise is not only of a preference over the original shares, but also a guaranty that the dividend shall be paid.  And herein it differs materially from the cases cited by the defendant.

III.  The remedy in this case is not limited to proceedings in equity.  It may be enforced at law, because the dividends on the new shares are guaranteed as well as preferred.  There is no legal objection to an action at law upon a contract between a corporation and a shareholder; but if there were, it would not avail in this case, because the defendant corporation was authorized to contract with its stockholders or others.  (See the act of the Assembly.)  And further, even if the act referred to did not authorize the contract, the defendant would be estopped by its own conduct in this transaction, from denying its authority.

IV.  The true construction of this contract, supported by all the cases cited, is, that the word " dividend " is equivalent to the word "interest;" whence it follows that an action at law is proper for its recovery.  The case is new in this country, and no case exactly like it has been found, where an action at law has been commenced.  There can, however, be no objection, in a case like this, to make a precedent upon principles familiar to the common law.  If, in this case, there is a binding contract between the plaintiff and the defendant corporation, the breach of that contract most certainly can be enforced by an action at law.

BRADLEY, C. J.  The defendant corporation was authorized, by an amendment of its charter, to issue five thousand shares of additional stock, and to provide that the same be " a preferred and guaranteed stock, entitling the holder to preferred and. guaranteed dividends equal to ten per cent. per annum, payable semi-annually."  Pursuant to this authority this stock was issued, and the certificates entitled " preferred and guaranteed ten per cent. stock," contained the expression, " the same being entitled to preferred and guaranteed dividends at the rate of ten

per cent. per annum, payable semi-annually, before any dividend shall be paid on any other stock in said company." This suit is brought to compel the company to pay the plaintiff, holding a portion of said stock, a sum of money equal to ten per cent. per annum on his stock, though no dividends have been earned. .

The question presented is, what is the meaning and engagement of the company, as expressed in these words? The relations between these parties are obviously those between shareholders and the corporation. They are not, on the face of the contract, those of creditor and debtor. A corporation may issue bonds or other obligations convertible at certain times and upon certain contingencies into stock. They may issue stock, as in this case, redeemable at a certain time and upon certain conditions. But until such change is made in either case, the original relation remains. A holder of the stock retains his right to share in the management of the corporation and to participate in its profits. He is not its creditor by virtue of this relation. If he is to be constituted its creditor, there are well-known modes and words by which that relation can be expressed. If, instead of adopting them, he receives a certificate of stock, and then claims to be both its creditor and stockholder by virtue of the same contract, the burden is upon him to show that such anomalous relation exists. The presumptions of law and the usual course of business are against him. In this case, the evidence of the relation is a certificate of stock, and the subject of the engagement or contract is the dividends, so called, to be paid upon it. A dividend is money paid out of profits by a corporation to its shareholders. A preferred dividend is that which is paid to one class of shareholders in priority to that to be paid to another class.

The word over which the controversy arises in this case is "guaranteed." Guaranteed, in addition to preferred, applied to dividends, means what? It is certainly not used in the strict and proper sense of the word, for there is, in this contract, no third party promising to make good an engagement by the corporation to its stockholders. Is it, on the one hand, an instance

Taft, Trustee, *v.* Hartford, Providence and Fishkill Railroad Co.

of that tautology so common in legal proceedings,—a synonym for " preferred," and not increasing its significance ?   Or does it, on the other hand, when it is added to the word dividend, entirely change its character and meaning, and convert a dividend, which, in its nature, cannot legally exist except when originating in profits, into a liability entirely independent of the pre-existence of such profits ?   Or has it still a third signification, by which, added to the idea of a simple preference out of dividends, it shall be considered as an engagement that a dividend, equal to the sum of ten per cent. per annum, shall be charged upon all the profits which, from year to year, may accrue, thus binding and pledging the total sum of all the earnings of the company, so long as the engagement lasts, to the payment of a dividend " equal to," as the amended charter says,"—" at the rate of," as the company express it,—as much as ten per cent. per annum, if semi-annually paid, would amount to, and this amount to be paid before the other stock receives anything.

Intervening the two arguments in this cause, the Court examined, and desired the counsel to examine, beyond our own libraries, the decisions of the courts upon this subject, to see if this somewhat anomalous expression had received a judicial or practical construction.   Among the emergencies so common to these railway companies in our country, and in that from which we derive our language and so much of our law, we thought it not unlikely that similar circumstances had induced similar contracts, and that the language used by this company, doubtless under the advice of counsel, might have been taken from railway legislation, or contracts elsewhere, and with a full knowledge of its legal and practical meaning.   In this country we found no decision throwing light on this question.   In England, however, there are several.   The most apt of these cases is, perhaps, *Henry* v. *The Great Northern Railway Company*, 3 Jurist, part i. p. 1,133.   An act of Parliament in that case authorized the company " to guarantee the payment of dividends," not exceeding a certain per cent., " and in preference to the payment thereof on other shares."   The question in this, as in the other English cases over similar words, was between what we have in-

dicated as the first and third construction. It has never been even claimed in the English courts that the construction secondly stated by us, and urged by the plaintiff, could be adopted, and the court decides that these statutes guarantee to the favored stockholders "a charge on all accruing profits at the stipulated rates, before anything is divided among the ordinary shareholders. This is substantially *interest* chargeable exclusively on profits." And they further hold that if the profits, accrued when the dividend is declared, are insufficient to furnish the stipulated amount, *the deficiency is a charge upon subsequent profits.* Again, in *Crawford* v. *North Eastern Railway Company*, 3 Jurist, N. S. part i. p. 1,093, Vice-Chancellor Wood says, in conclusion: "Of course, I do not mean to say that it is a guaranty in any other sense than that you are to be paid these sums out of the profits of the company. That is the only fund you are to look to. If the company make no profits you will have no dividend, but, I apprehend, the profits in perpetuity." In *Matthews* v. *Great Northern Railway Company*, 5 Jurist, N. S. part i. p. 284, the Vice-Chancellor says of the term "guaranteed share:" "It must be a guaranty limited, at least, to the whole profits made by the railway."

Without dwelling longer upon this and similar authorities, it is perfectly apparent that the guaranty of a dividend by a railway company is considered by the courts, and, it seems from the course of the argument by the counsel in these causes, who, doubtless, faithfully represent the interests and wishes of their clients, by the business community also, to mean nothing more than a pledge of the funds legally applicable to the purposes of a dividend; that, in short, it is a dividend, and not a debt, which is thus preferred and guaranteed; and as the statement of facts admits that dividends have not been earned in this case, the plaintiff, if there were no other difficulties in his way, could not recover, and we must give judgment for the defendant.

NOTE.—Mr. Justice Durfee did not sit in the above case, he having been of counsel at the time the arguments in the suit were first filed, as appears by the foregoing report.