SARAH KEELEY, Plaintiff, *v.* ASSOCIATED GAS AND ELECTRIC COMPANY, INC., Defendant.

Supreme Court, Chenango County, April 12, 1935.

*Glenn F. Carter,* for the plaintiff.

*Mandeville, Waxman, Buck, Teeter & Harpending,* for the defendant.

HEATH, J. The plaintiff has brought an action against the defendant alleging that " plaintiff on or about October 25, 1929, purchased of Defendant, through its authorized officers, agents,

servants and/or employees, a security of Defendant known as 6% Debenture, receiving certificate therefor, for which plaintiff paid Defendant the sum of Two Thousand Dollars ($2,000.00). * * * That on or about June 12, 1933, at the demand, instance, solicitation request or requirement of defendant, plaintiff delivered said Debenture certificate to Defendant, Defendant exchanging or converting it into or for a 6% convertible obligation, series A, of Defendant company of the amount of $2,000.00."

The complaint further alleges " That on or about October 25, 1929, and prior thereto, Defendant through its authorized officers, agents, servants and/or employees, stated to and agreed with plaintiff that for any securities including the security or debenture, purchased as hereinafter mentioned, purchased from Defendant, the Defendant at any time, at the option or election of plaintiff, would refund the purchase price, or take back the security from plaintiff and repay to plaintiff the full purchase price, or buy back from plaintiff such security and pay Plaintiff the full amount she paid for same with interest, * * * and it was understood and agreed between the plaintiff and Defendant that such agreement would be binding, remain in force, and apply to any exchanges or conversions from the security purchased in to any other issues or securities of Defendant company, and that plaintiff could receive back from defendant the full amount she paid for such security regardless of its conversion into any other security of Defendant company."

The complaint further alleges that plaintiff has tendered to the defendant the security held by the plaintiff together with the amount of dividends or interest received and has demanded payment of $2,000, with interest.

This is the return of an order to show cause why the plaintiff should not serve an amended complaint making it more definite and certain as to (1) whether or not the security mentioned in the complaint was one issued by the defendant to the plaintiff as the defendant's own obligation; (2) whether the convertible obligation, series A, described in paragraph VI was issued by defendant to plaintiff as the defendant's own obligation; (3) whether the plaintiff is claiming under an agreement of rescission or an agreement to buy back; (4) " if each or both of the bonds described in the complaint herein were in fact issued by defendant to plaintiff as the defendant's own obligation that all words describing the transactions by which Plaintiff secured the same as a purchase or sale or words of similar import be eliminated and stricken out of the complaint and that the Plaintiff be permitted to substitute therefor appropriate words descriptive of a transaction of borrowing and loan."

Said order further required the plaintiff to show cause why the words " purchased," " purchase " and any other words of similar import, wherever they appear in the complaint, should not be stricken out as irrelevant, improper and tending to prejudice, embarrass and delay the fair trial of this action.

At the time of the service of the order to show cause herein, the defendant served notice upon plaintiff pursuant to section 327 of the Civil Practice Act demanding that plaintiff produce for inspection upon the return day of the order to show cause the six per cent convertible obligation, series A, mentioned in plaintiff's complaint.

Upon the return day the plaintiff did produce said obligation for the inspection of the defendant and the court. The attorney for the plaintiff stated that the obligations referred to in paragraphs 1 and 2 of the order to show cause were direct obligations of the defendant to the plaintiff and plaintiff's attorney stated that he would consent to an order striking out of the complaint the language setting forth that the defendant agreed to buy back the securities.

The contested portion of the motion is whether or not the facts set forth in the complaint were properly designated by the plaintiff as a sale or purchase.

What is the nature of the transaction as between the plaintiff and defendant as alleged in the complaint? The facts stripped of legal characterization are that the plaintiff handed to the defendant the sum of $2,000 and the defendant handed to the plaintiff its own written debenture which acknowledged defendant's indebtedness to the plaintiff in the sum of $2,000. If the debenture here were a simple one, merely setting forth defendant's obligation to pay the plaintiff $2,000 at a certain time, it would seem clear to this court that this transaction should be legally characterized as a loan by the plaintiff to the defendant.

Cook on Corporations ([7th ed.], vol. 3, § 776) sets forth that "An English debenture is a term which in its widest application includes any instrument issued by a corporation which creates a debt or acknowledges it."

Again (at p. 2966) the following language is used: " The power to issue debentures is generally conferred by the charter. Where it is not so conferred it is implied from a general power to borrow money and create debts."

At page 2971 the following language is used: " In the United States, as in England, a debenture is ' a writing acknowledging a debt.' "

That there is a distinction between a debenture and a share of stock in a corporation is indicated in *People ex rel. Cohn & Co.* v.

*Miller* (180 N. Y. 16), where the court (at p. 22) said: " This instrument is called ' preferred debenture shares of the capital stock.' The word ' debenture ' as defined means ' a writing acknowledging a debt; ' when, therefore, a certificate is declared to be a preferred debenture share of capital stock, it presents a legal contradiction, a debenture being the acknowledgment of a debt and a share of stock representing a contribution of capital to a corporate business equal to the amount of its face value, either in money or in property."

The question as to whether or not a person may sell his own obligation to pay seems to have been decided as early as the case of *Schermerhorn* v. *Talman* (14 N. Y. 93), where the court said (at p. 116): " *Prima facie*, at least, such a transaction is a loan; because, a bank cannot make *a sale* of its own promises to pay; which are of no value so long as they remain in the possession of the bank. It is not until they have passed into other hands that they acquire a value and become possessed of the attributes of property.

" It would seem hardly to require either authority or argument to prove that a person cannot sell his own promises to pay. It necessarily results from the very definition of a sale, in which all writers agree. Chancellor KENT says: ' A sale is a contract for the transfer of *property* from one person to another for a valuable consideration.' (2 Kent's Com. 468, 5th ed.) Bouvier, in his Law Dictionary, defines a sale to be ' an agreement by which a man gives a thing for a price in current money.' He adds: ' To constitute a valid sale there must be a *thing* sold.' Long says: ' Three particulars are included in a valid sale, viz: a *thing* which is the subject of it, a price, and the consent of parties. If the subject of the intended sale have no existence, actually or potentially, there can be no valid sale.' (Long on Sales, 3.)

" It is plain that the giving of one's own promise to pay to another, for any consideration, cannot be brought within these definitions of a sale. It is impossible to call such a transaction a transfer of property from one person to another, as the promise is not property in the hands of the promisor. One who executes and delivers such a note thereby makes a valid contract, viz., a contract to pay according to the tenor of the note. All that he does, *i. e.*, both the execution and the delivery are essential to the completion of this contract; which certainly is not a contract of sale, but is supposed to be the subject of such contract. If then there is a sale, it is made by the same acts which create the thing sold. This is not only repugnant to every just definition of a sale, but logically absurd."

The court in the case of *Brownell* v. *Town of Greenwich* (114 N. Y. 518) said (at p. 529): " It is clear that the purchaser of a bond

from the obligor named therein simply lends the latter money. (*Coddington* v. *Gilbert,* 17 N. Y. 489; *Ahern* v. *Goodspeed,* 72 id. 108.) The essence of the original transaction between the parties, therefore, was a loan of money secured by the bonds of the borrower. The bonds had no legal inception and could not become valid obligations, aside from any other question, until actually delivered for a valuable consideration. Under the circumstances, we think that the delivery of the bonds to the plaintiff determines the date when his bonds were issued."

The court in the case of *Hoag* v. *Town of Greenwich* (133 N. Y. 153) said (at p. 159): " The transaction authorized was a borrowing of money by the town to be used for certain specific purposes. Describing it as a sale of the bonds does not alter the real nature of the contract. The town could not sell its own promise to pay, and the bonds in its hands were that and nothing more. They acquired no vitality as securities capable of a sale until they had obtained a valid inception in the hands of the first holder. The consideration described as paid by him is in truth a loan of so much money to the town, for which he takes the town's promise to pay in the form of a bond. The result is in no respect different from what it would have been if the town borrowing the money had given as a voucher its promissory note. The bond and the note alike are but evidences of the debt which itself is the obligation to repay the loan. I think the authorities fully justify this view of the nature of the transaction. (*Coddington* v. *Gilbert,* 17 N. Y. 489; *Eastman* v. *Shaw,* 65 id. 527; *Ahern* v. *Goodspeed,* 72 id. 108.) "

Other cases that throw light on the subject are *Coddington* v. *Gilbert* (17 N. Y. 489); *Clark* v. *Sisson* (22 id. 312); *Zimmerman* v. *Zimmerman* (193 id. 486).

The debenture in question contained conversion clauses; in other words, under certain specified conditions the obligee or the obligor might elect to have the bond converted into another type of certificate. In fact the complaint alleges that the defendant did on the 12th day of June, 1933, elect to convert the original debenture into a series A, six per cent convertible obligation. Do these options in the original debenture make it a subject of sale? It would seem not.

In one sense it may be stated that the options constitute an election as to how the original debenture may be satisfied. In other words, the defendant agreed to pay $2,000 upon the maturity of the bond or upon a certain contingency to satisfy the bond by the substitution of another debenture. Would not that conversion constitute a satisfaction of the original debenture?

In another sense it would seem proper to inquire as to whether or not the giving of an option is ever a sale. It would seem not, for the giving of an option is merely the entering into a contract, perhaps for the future sale of something. Of course all students of the law recognize the distinction between a contract to sell and a sale. (Pers. Prop. Law, § 82.)

This court is not unmindful of the holdings in the cases of *Fitzpatrick* v. *Associated Gas & Electric Co.* (148 Misc. 538) and *Emerson* v. *Associated Gas & Electric Co.* (Id. 636). It is true that the decision in these cases proceeds on the theory that the defendant sold its bond to the plaintiff and that the Sales Act applies. It is obvious that the question here raised was not raised in either of these cases. In passing it should be noted that the cases of *Johnson* v. *Trask* (116 N. Y. 136); *Fitzpatrick* v. *Woodruff* (96 id. 561) and *Wooster* v. *Sage* (67 id. 67), cited in the *Emerson Case* (*supra*), were cases where the contract was between the original obligee and a third party. Of course after a bond has been executed and *delivered*, the bond is a chose in action in the hands of the then holder and as such is subject to sale.

It is obvious that the determination of this question will have considerable bearing upon the defenses which may be urged by the defendant. A plaintiff cannot allege inconsistent facts. (*C. I. T. Corporation* v. *Daley*, 143 Misc. 712; *Graham* v. *Buffalo General Laundries Corp.*, 235 App. Div. 246; affd., 261 N. Y. 165.)

A defendant is prejudiced by being compelled to answer inconsistent, irrelevant matter. (*Newton* v. *Livingston County Trust Co.*, 231 App. Div. 355; *Murphy* v. *National City Bank*, 203 id. 571; *Cleminshaw* v. *Coon*, 136 id. 160; *Hamilton* v. *Hamilton*, 124 id. 619.)

The characterization of a loan as a sale in a pleading or the characterization of a giving of an option as a sale would seem to be frivolous and tending to prejudice and embarrass a fair trial within the meaning of rule 103 of the Rules of Civil Practice. As the court said in the *Schermerhorn Case* (*supra*), to call the transaction a sale is " logically absurd."

Defendant's motion is granted to the extent that the plaintiff should serve an amended complaint stating that the obligations were direct from the defendant to the plaintiff and omitting the characterization of the transaction in question as a sale. In view of this court's holding that the transaction was a loan, plaintiff will be at liberty to proceed in the amended complaint as he is advised the situation warrants without being bound by the stipulations made upon the argument of this motion.