THE PEOPLE OF THE STATE OF NEW YORK ex rel. S. COHN & Co., Appellant, *v.* NATHAN L. MILLER, as Comptroller of the State of New York, Respondent.

CORPORATION — FRANCHISE TAX — WHEN CORPORATION ESTOPPED FROM ASSERTING THAT PREFERRED STOCK CERTIFICATES REPRESENT A DEBT. Where the construction of instruments purporting to be certificates of the preferred stock of a corporation, which in its articles of association declare that the money represented by them constitutes a part of its capital stock, is debatable, as to whether they are stock certificates representing a contribution of capital to the corporate business equal to their face value, or whether they are solely obligations for the payment of money, the corporation in a proceeding to determine its liability to a franchise tax is estopped from asserting that the amount represented by them constitutes a debt to be deducted from the original assessment made by the comptroller.

*People ex rel. S. Cohn & Co.* v. *Miller,* 94 App. Div. 564, affirmed.

(Argued November 21, 1904; decided December 6, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 6, 1904, which modified and confirmed as modified a determination of the defendant imposing a franchise tax upon the relator, a domestic corporation.

The certificate of relator's incorporation reads in part as follows:

" CERTIFICATE OF INCORPORATION

of

" S. COHN CO.

" STATE OF NEW YORK,  }
" *County of New York.* }  *ss.:*

" We, the undersigned, all being persons of full age, and at least two-thirds of us being citizens of the United States, and at least one of us a resident of the State of New York, desiring to form a stock corporation pursuant to the provisions of the Business Corporation Laws of the State of New York, do hereby make, sign, acknowledge and file this certificate for the said purposes as follows:    *    *    *

" *Third :* The amount of the capital stock of the said corporation is one hundred and fifty thousand dollars ($150,000), of which one hundred thousand dollars shall be preferred debenture stock, being obligations of the company as to dividends and capital and entitled to cumulative dividends at the rate of six per cent (6%) per annum; and the remaining fifty thousand dollars ($50,000) shall consist of common stock.

" *Fourth :* That the number of shares of which the said capital stock shall consist is one thousand five hundred (1,500) of the par value of one hundred dollars ($100) each, and the amount of capital with which said corporation shall begin business is fifty thousand dollars ($50,000).   *   *   *

" *Sixth :* Its duration is to be perpetual.   *   *   *

" *In Witness Whereof, &c.*"

The relator's certificate of preferred stock, so-called, reads :

" No. 50.                                             Shares.

" S. Cohn & Co.

" Capital Stock, $150,000.                Par Value, $100 Each.

" This is to certify that .................. is the owner of .................. preferred debenture shares of the capital stock of S. Cohn & Co., transferable only on the books of the company by the holder thereof in person or by attorneys on surrender of this certificate.   Said preferred debenture stock shall entitle the holder thereof to receive out of the net earnings, and the company shall be bound to pay, a fixed yearly cumulative dividend of six per centum, but no more, payable semi-annually, before any dividend shall be set apart or paid on the common stock.   The holders of this preferred stock shall, in case of the liquidation or dissolution of the company, be entitled to be paid in full, both the principal of their preferred debenture shares and the accrued dividends charged, before any amount shall be paid to the holders of the common stock.

" Be it further known, that for value received the company hereby agrees to pay to the registered holder of this certificate the par value of ............ dollars, the face value thereof,

in gold coin of the United States of America, of the present weight and fineness, or its equivalent, on the first day of July, one thousand nine hundred and twelve. All payments of dividends and principal will be made by the company at its office, No. 11 Maiden Lane, New York City.

" Be it further known, that the terms and conditions governing the payment' of this certificate and the payment of dividends hereon are endorsed on the back hereof and are hereby expressly made a part of this certificate, as much so as if they were fully written on the face hereof.

" *In Witness Whereof*, the said company has caused its corporate seal to be fixed hereto and this certificate to be signed by its president and treasurer."

The further material facts are stated in the opinion.

*Eugene G. Kremer* for appellant. The comptroller is not authorized to compute the franchise tax upon the par value of the capital stock nor to speculate as to what rule would apply if the facts were different, but must ascertain the amount of the assessable capital by deducting the liabilities from the value of the assets. (*People ex rel.* v. *Knight*, 173 N. Y. 255; *People ex rel.* v. *Roberts*, 168 N. Y. 14; *People ex rel.* v. *Roberts*, 154 N. Y. 101; *People ex rel.* v. *Wemple*, 138 N. Y. 588.) The company's sealed agreement to pay $100,000 in gold coin on the 1st day of July, 1912, is a liability. (*Corcoran* v. *U. S.*, 157 U. S. 296; *People ex rel.* v. *Roberts*, 154 N. Y. 101; *People ex rel.* v. *Coleman*, 126 N. Y. 433; *People ex rel.* v. *Burker*, 139 N. Y. 55.) The certificates for $100,000 are to be regarded as certificates of indebtedness and not as certificates of stock. The question is not what the incorporators call the certificates but what the facts and circumstances require the court to call them. (*Matter of Bronson*, 150 N. Y. 8; *Burrell* v. *B. R. R. Co.*, 75 N. Y. 211; *L. & L. Ins. Co.* v. *Massachusetts*, 10 Wall. 566; *Jackson* v. *Myers*, 3 Johns. 387; *Post* v. *Weil*, 115 N. Y. 361; *Burt* v. *Rattle*, 31 Ohio St. 116; *Helter* v. *Marine Bank*, 89 Md. 602; *Matter of I. L. Co.*, L. R. [11 Eq.] 478;

*Matter of Gen. Estates Co.*, L. R. [3 Ch.] 758; *Edmonds* v. *B. F. Co.*, L. R. [36 Ch. Div.] 220.)

*John Cunneen, Attorney-General* (*William H. Wood* on the brief), for respondent. The amount of relator's capital stock employed within this state for the year in question was a question of fact, and the comptroller's finding having been unanimously affirmed by the Appellate Division, is not review-able here. (*People ex rel.* v. *Morgan*, 178 N. Y. 433.) The preferred debenture stock issued by the relator is capital stock liable to taxation, within the meaning of section 182 of the Tax Law. (*Kent* v. *Q. M. Co.*, 78 N. Y. 159; *People* v. *U. Ins. Co.*, 15 Johns. 382; *City Bank* v. *Bruce*, 17 N. Y. 507; *Carpenter* v. *B. M. Co.*, 65 N. Y. 43.)

BARTLETT, J. The comptroller assessed the franchise tax on the alleged capital stock of the relator of $150,000, for the year ending October 31st, 1902. Thereafter application was duly made for a rehearing, which was granted, and after which the comptroller refused to revise his original assess-ment. Thereupon a writ of certiorari was duly issued to review the action of the comptroller, which resulted in an order of the Appellate Division affirming the determination of the comptroller, with a modification as to the rate of the tax, which is unimportant on this appeal.

The relator has insisted throughout these proceedings that it was entitled to deduct the sum of $265,000 of liabilities, which includes the $100,000 of alleged preferred stock. It also claimed that the greater part of its capital stock was not employed within the state of New York.

As the affirmance by the Appellate Division was unani-mous, only a single question of law remains to be examined on this appeal, to wit: Was the relator entitled to deduct the sum of $100,000, the total amount of its preferred stock, as a debt?

This record discloses a very remarkable state of affairs. The relator includes its preferred stock as capital in its report to the comptroller, and its president, testifying in the

**20**    People ex rel. Cohn & Co. v. Miller.    [Dec.,

Opinion of the Court, per Bartlett, J.    [Vol. 180.

certiorari proceeding, insists that this amount represents an indebtedness and is in no sense stock.

In its report to the comptroller in December, 1902, the relator stated as follows : Number of shares of stock issued, 1,500 ; amount paid into the treasury of the company on each share, $100.00 ; amount of capital stock paid in good will $150,000 ; capital stock employed in New York state, all.

The president of the relator, testifying in the certiorari proceeding, stated that the total stock issued and outstanding was $50,000, and that the alleged certificates of preferred stock were not shares of stock. He was asked this question : "Was any part of your capital stock issued for good will? A. None whatever." He also swore that very little of the stock was employed in the state of New York.

We have quoted from this report to the comptroller and contrasted it with this testimony of the president of the relator, in order to emphasize the anomalous situation existing in this proceeding.

The legal question is presented whether the laws of the state of New York permit the organization of a corporation in a manner calculated to mislead the general public as to the amount of its capital stock and its total indebtedness.

The Stock Corporation Law (Chapter 688, Laws of 1892, § 40, as amd. by L. 1892, ch. 688, and L. 1901, ch. 354) provides : "The stock of every stock corporation shall be represented by certificates prepared by the directors and signed by the president or vice-president and secretary or treasurer and sealed with the seal of the corporation, and shall be transferable in the manner prescribed in this chapter and in the by-laws. No share shall be transferable until all previous calls thereon shall have been fully paid in."

Section 47 reads in part as follows : " Preferred and common stock.— Every domestic stock corporation may issue preferred stock and common stock and different classes of preferred stock, if the certificate of incorporation so provides, or by the consent of the holders of record of two-thirds of the capital stock, given at a meeting called for that purpose,

upon notice such as is required for the annual meeting of the corporation."

The remainder of this section regulates the proceedings of this meeting of stockholders, and also provides as follows: "And the corporation may, upon the written request of the holders of any preferred stock, by a two-thirds vote of its directors, exchange the same for common stock, and issue certificates for common stock therefor, upon such valuation as may have been agreed upon in the certificate of organization of such corporation, or the issue of such preferred stock, or share for share, but the total amount of such capital stock shall not be increased thereby."

This last quotation indicates very clearly the nature of preferred stock as understood by the legislature. It is manifest that it assumed, as must be the fact, that preferred stock represented a contribution of capital precisely the same as common stock, differing only as to the preferred right of the holder to share in dividends or interest.

The Business Corporations Law (Chapter 691, Laws of 1892) provides: "§ 3. Restrictions upon commencement of business.— No such corporation shall incur any debts until the amount of capital specified in its certificate of incorporation, as the amount of capital with which it will begin business, shall have been paid in in money or property."

Section 5 provides in part as follows: "Payment of capital stock.— One-half of the capital stock of every such corporation shall be paid in within one year from its incorporation, or the corporation shall be dissolved, and the directors, within thirty days after such payment shall make a certificate of the fact of such payment," etc.

These provisions of the various statutes, relating to the stock of corporations, indicate very clearly that the amount of capital stock paid in and certificate therefor issued is intended for the information of the general public as to the financial condition of a corporation and that its shares necessarily represented money or property contributed for the conduct of its business.

If a corporation may organize with a capital of $150,000, as alleged in its annual report to the comptroller and on the face of its certificate of preferred stock, leading the general public to believe that the total amount of its certificates represents capital contributed for the conduct of its business, when in fact two-thirds of the amount, instead of representing what its name indicates, is in fact a debt pure and simple, there is no safety in dealing with corporations.

The permission to issue preferred stock is practically allowing the stockholders to divide the profits of the business in such manner as they may see fit. It is the usual practice to allow a certain dividend on the preferred stock, the holder having no right to vote; also to defer payment of dividend on the common stock until the claims of the preferred shareholders are satisfied. It is assumed, as matter of course, that the total amount of stock, preferred and common, represents an actual contribution of capital paid in either in money or in property at a legal valuation.

The certificate of preferred stock in the case at bar states in its heading that the capital stock of the relator is $150,000. Nevertheless we find in the body of the certificate, and in the terms and conditions indorsed thereon, that the holder of the preferred stock, in case of liquidation, is to be paid in full before the holders of common stock receive anything, and the company agrees not to create any lien superior to the lien of the certificate.

It is also provided: "Be it further known, that for value received, the company hereby agrees to pay to the registered holder of this certificate the par value of ................ dollars, the face value thereof, in gold coin of the United States of America, of the present weight and fineness, or its equivalent, on the first day of July, one thousand nine hundred and twelve."

This instrument is called "preferred debenture shares of the capital stock." The word "debenture" as defined means "a writing acknowledging a debt;" when, therefore, a certificate is declared to be a preferred debenture share of capi-

tal stock, it presents a legal contradiction, a debenture being the acknowledgment of a debt and a share of stock representing a contribution of capital to a corporate business equal to the amount of its face value, either in money or in property.

We are of opinion that if these certificates are to be deemed solely obligations for the payment of money and to constitute the holders thereof creditors of the corporation on an equality with other creditors, they are not stock certificates, as they represent no contribution of capital as such. But it is, to say the least, very doubtful if such is the legal import of the certificates. In form and terms each certifies that the holder thereof is the owner of a certain number of preferred " debenture shares of the capital stock of S. Cohn & Company * * * said preferred debenture stock shall entitle the holder thereof to receive out of the net earnings " certain specified payments. It may be argued, in the face of this explicit declaration, that the holder is the owner of stock and of the plain and clear proposition of law that the corporation cannot be a debtor to a stockholder for the amount of his contribution to capital stock; that the promise to pay dividends and principal at a specified time should be construed to be merely a contract between the stockholders as to the respective rights of the holders of different kinds of stock to share in the property as between themselves. We do not feel inclined to decide this question in a litigation to which none of the holders of preferred stock is a party or in a condition to assert his rights. We do hold, however, that the question of the construction of the instrument being clearly a debatable one the relator should, in the face of the declaration in the articles of association that the money represented by these certificates constitutes a part of the capital stock of the corporation, be estopped from asserting to the contrary in a proceeding to determine their liability to the franchise tax.

The order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT and VANN, JJ., concur; WERNER, J., absent.

Order affirmed.