## CARSON, PIRIE, SCOTT & CO. v. DUFFY-POWERS, Inc.

### No. 1059.

District Court, W. D. New York.

Dec. 1, 1934.

Wile, Oviatt & Gilman, of Rochester, N. Y., for receivers.

Hubbell, Taylor, Goodwin, Nixon & Hargrave, of Rochester, N. Y., for complainant.

Warren, Shuster, Case & Halsey, of Rochester, N. Y., for debenture bondholders.

KNIGHT, District Judge.

Receivers were appointed for Duffy-Powers, Inc., on January 12, 1932. The assets of the corporation have been liquidated. The claims of creditors are in excess of the amount realized. A special master was appointed to determine the claims of creditors against the defendant, the liens, if any, and the preference or priority, if any, among creditors and lienors. Exception has been taken, by a group of debenture creditors, to certain findings of fact and conclusions of law set forth in the report of the special master.

Duffy-Powers Company, the predecessor of Duffy-Powers, Inc., passed into the hands of receivers in 1923. In 1926 a reorganization was effected, by the terms of which the new corporation took over all of the assets of the old corporation, and as consideration assumed all of the obligations of the receivers, paid receivers' disbursements and receivers' and attorneys' fees, paid in full all claims under $50, and paid 20 per cent. on all other claims. So-called income debentures were issued to the general creditors to the amount of the balance of their claims.

The capital and debenture structure of the corporation was to be as follows:

2,500 shares of 7% cumulative Preferred Stock, par value $100.00 per share ..................... $250,000

6% Income Debentures, maturity 10 years ......................... 533,000

13,000 shares Common Stock without nominal or par value ........... 65,000

The notice to creditors and stockholders so far as pertinent here stated the relation of the stock and debentures to the assets and earnings of the corporation to be as follows: "Preferred Stock would be preferred as to earnings from date of issue, at rate of not more than 7% of the par value of the stock. In the event of liquidation or dissolution of

the corporation, Preferred Stock would be liquidated first from the assets at $100.00 per share and cumulative dividends. * * * The Income Debentures would immediately follow the Preferred Stock as to earnings and assets. They would mature in ten years. Interest would be non-cumulative, and at no time exceed the rate of six per cent. per annum. After earnings had created a surplus of $200,000 all additional earnings would be paid in liquidation of principal of debentures. * * * Common Stock could not share in earnings or any part of the assets nor be entitled to vote at any stockholders' meeting until after all income debentures had been retired."

The debenture holders were also to be protected by insurance on the life of Mr. James P. B. Duffy in the sum of $180,000, in the event the proposed plan of reorganization was approved and accepted by the creditors. The insurance was to be carried by the new corporation for the benefit of the holders of the income debentures, and was to continue in force until the income debentures were paid or retired. This insurance was taken out and was carried by the new corporation up to the time of the receivership. A fund of $27,000 was realized upon the surrender of the policies, and is held for the benefit of the debenture holders. Their right to this fund is not contested by the receivers.

Debentures to the amount of approximately $533,000 were issued pursuant to the reorganization plan. No payments have been made upon these.

The debenture holders contend that the debentures are a debt of the bankrupt corporation, and as such are entitled to be paid pro rata with the general creditors of the corporation. They also contend that failure of the corporation to pay the premiums on the aforesaid life insurance agreed to be paid constitutes a breach of contract, for which the bankrupt is liable to the debenture holders in the total of $80,292.43, and that the debenture holders are entitled to share pro rata with the general creditors in such an amount. Claims were presented in the estate on account of the aforesaid alleged liabilities.

On the other hand, the receivers contend that the debentures were a part of the capital structure of the reorganized corporation on which no distribution could be made until after payment of all indebtedness to general creditors, and by reason of the provisions of the debentures, until after payment of the specifically described preferred stock; and that such debentures "are in effect but a form of preferred stock," inferior in rank to the corporation's preferred stock.

The special master has found that the income debentures "were in effect nothing more than a species of preferred stock"; that they "were inferior in rank to the 7% preferred stock"; that the holders of the income debentures as such "never were, creditors of Duffy-Powers, Inc. * * * That insofar as there was any agreement on the part of Duffy-Powers, Inc., to carry insurance on the life of James P. B. Duffy for the benefit of the income debenture holders after the capital of that corporation became impaired or after the incorporation became insolvent that agreement was invalid," for the reason that in effect it provided for the distribution of the corporation's assets for the benefit of stockholders "which in effect said income debenture holders were." Such invalidity is based upon section 58 of the Stock Corporation Law of the state of New York (Consol. Laws, c. 59), which provides in substance that no stock corporation "shall declare or pay any dividend which shall impair its capital or capital stock."

█ █ With the conclusion of the special master that the income debenture holders are not entitled to share in the assets of the corporation this court agrees. With the finding that the income debentures are a species of preferred stock and the further conclusion that the insurance agreement was ·invalid because it purported to provide for a distribution of a .dividend out of the corporation's assets this court disagrees.

█ It is well settled that the term applied to an instrument does not necessarily determine its character. In re Fechheimer Fishel Co. (C. C. A.) 212 F. 357; White on Corporations (N. Y. Bender Ed.) vol. 2, p. 178. A debenture is an instrument of comparatively recent use in this country. It represents a debt. It is an acknowledgment of a debt. 3 Cook on Corporations, p. 2709, 776. A bond is usually, though not always necessarily, under seal. It likewise represents a debt. It may or it may not be secured. 9 C. J. p. 8. The distinguishing feature of stock from bonds and ordinarily from debentures is that it gives the right of ownership in part of the assets and the right to an interest in any surplus after payment of debts. In no part of the reorganization agreement, the articles of incorporation, or the instruments issued under the name of income debentures is there anything to indicate the character of these debentures as or in effect preferred stock.

Indeed, quite the contrary appears from these instruments.

To the reorganization agreement we must look to ascertain the intent of the parties. While intent would not be controlling under all circumstances, the intent here seems clear and unambiguous, and such intent characterizes or classifies these particular instruments as debts fixed in amount. The proposed plan refers to "6% Income Debentures," as distinct in class from preferred stock and common stock. It fixes the order of payment subsequent to preferred stock and preceding common stock. It provides when and how the three types of issues shall be paid. The debentures are nowhere classified as stock. The holders never participated as stockholders. They were never called on to take part in stockholders' meetings or to participate in the management of the new corporation. It is not necessary to classify them as bonds. As distinguished from stock, bonds do represent corporate indebtedness, but these debentures are not referred to in any way as bonds, and there is no reason to treat them as such. Nor can it be said as a matter of law that these debentures are in effect preferred stock.

The reorganization plan presents clearly the minds of those joining it. Here was a company in financial difficulties. It evidently was the belief that the future promised its ability to successfully carry on the business. New capital was required. Its creditors who were primarily most interested in its success sought some arrangement or adjustment whereby their claims could ultimately be paid. They saw this chance in a reorganization from which there could be procured some additional capital and also some payment upon their claims. They knew that any reorganization was fraught with some danger. They knew that, in order to succeed, the business of the reorganized company must be carried on in the ordinary business methods. They knew that, in order to do business, it would be necessary that obligations be incurred. The only reasonable and fair construction that can be placed on this plan of reorganization and the purpose back of it is that then creditors took the chance of accumulation of obligations of the new company which could not be met. They knew that the credit of the new corporation would be seriously affected if it started out with an issue of preferred stock in the amount of $250,000 and having a debt representing the total of the claims of the creditors of the old corporation. So it seems to me they must have anticipated their subordination to new contractual obligations of the

new organization. The reorganization agreement contains no express or implied assumption of then existing indebtedness of the old company. The actual import was that they were to receive payment of 20 per cent. upon their claims and defer payment of the balance until the earnings were sufficient to pay principal and interest out of surplus earnings or until the debentures matured. Certainly the payment of the obligations of the new corporation could not be deferred to the maturity of the debentures. The fact that there were no net earnings does not alter the character of the debentures or the evident intention of the holders to receive payments out of income. There were no earnings nor was there any surplus out of which this indebtedness could be paid. The only assets in the hands of the receiver to which they are entitled are the assets in the custody of the receiver which came from the surrender of the insurance policy carried for the benefit of the income of these debentures.

In re Fechheimer Fishel Co. (C. C. A.) 212 F. 357, so-called debenture bonds were held to be in effect preferred stock, but the facts there are quite different than those presented here. The question there presented was whether the corporation had the right to buy these so-called bonds, and it was held that it did not have the right so to do unless it had sufficient net profits to pay for them without diminishing the capital fund applicable to the payment of debts. The reasoning advanced there is applicable here, whether we call these debentures bonds, debts, or stock. In the above-mentioned case, by agreement made part of the bonds, the "bonds" and stock were made inseparable. These "bonds" and stock were issued share and share to the organizers. The contention made before the referee and sustained by the district and circuit courts were that claimant who had secured a note for his "bond" and stock was bound by the terms of the "bond" or stock, and could not receive payment in advance of general creditors. The indorsement on the bond provided that, upon liquidation or dissolution, the so-called "bonds" were entitled to the whole of the residue of the assets. In the case at bar, the order of payment is definitely fixed; in the Fechheimer Case, the so-called "bond" holders and shareholders are one, and as such managed the corporation and owned all the assets, subject to the payment of debts. Here the debenture holders were not also stockholders. The terms of the debenture clearly point out when and how they shall be paid, and disclose no obligation to pay under other conditions, save out of net

earnings or surplus. Synnott v. Tombstone Consol. Mines Co. (C. C. A.) 208 F. 251. The income debentures represent debts of the new corporation, payable under the provisions of the reorganization plan and the debenture certificates issued thereunder, subsequent to the debts incurred by the new corporation. Apparently claimants' main contention is that the debenture holders are entitled as creditors to a dividend claim for $80,292.43, the amount necessary to pay the premiums on the insurance on the life of Mr. Duffy to carry them until the happening of either of two events, the death of Mr. Duffy or the payment of the debenture bonds; in other words, they assert they are entitled to share pro rata with the general creditors in the above-mentioned amount. It is my view that the agreement in respect to the insurance did create a debt or obligation on part of the company. However, such debt occupies no different status as regards general creditors than does the debt on account of the debentures themselves. The plan of reorganization does not, nor do the debentures by their terms, require the corporation to pay out of its capital the premiums on the insurance to make them paid-up policies. Obviously, if paid, the assets of the corporation would be lessened and the rights of general creditors impaired. The plan, as regards the premiums, must be considered in a light that is consistent with the whole purpose of reorganization. The application of the assets of the company, in event of liquidation, to the payment first of the general creditors, must have been contemplated. The debenture holders can hold no better position as to the obligation of the corporation to pay the premiums on the insurance policies than the position they hold as to the obligation to pay the debentures themselves. One debt only is represented.

Again, the general creditors contracted with no knowledge of any alleged indebtedness on account of insurance premiums. If, under a plan of reorganization to which individuals or corporations are not parties and of which they have no knowledge, obligations of the nature claimed in respect to this insurance are entitled to a parity with all general creditors in the distribution of assets of a corporation on dissolution, then there is no limit to the extent to which such an agreement might be carried, and as a result thereof the rights of general creditors are largely wiped out.

It seems that no claims have been presented in behalf of the cumulative preferred stockholders. While conceding their right to priority over the debenture holders so far as the income debentures themselves are concerned, if their claims had been presented, as regards the insurance premiums, it is claimed that the debenture holders are entitled to priority over the cumulative preferred stockholders in all events, because the debenture holders have a claim as creditors "for the purpose of determining the amount available to pay dividends on the preferred stock and interest on the income debentures." The clause quoted from the agreement is expressed in connection with an entirely different purpose. It is difficult to harmonize the reasoning that the cumulative preferred stock is entitled to prior right as to part and subordinate right as to part. It is also said that, since all the money put in by the cumulative preferred stockholders has been lost, they have no claim to any of the assets. That the investment has been lost prevents recovery, but it in no wise affects the status of the stockholders with reference to the income debenture holders.

A very considerable portion of the briefs of counsel for the receivers is directed to the question of the right to pay premiums on the insurance while the capital stock is impaired. Treating the debentures as preferred stock, there can be no question that such payments would be invalid under the laws of the state of New York which are applicable here. Section 58, Stock Corporation Law of New York (Consol. Laws, c. 59), and section 664 of the Penal Law of New York (Consol. Laws, c. 40). The purpose of these statutes is to keep the capital fund for the payment of claims of creditors. In the view taken by this court that the unpaid insurance premiums are debts payable, but are payable subsequent to debts incurred by the new corporation, it is not necessary to consider the cases cited in support of the invalidity of the debentures as preferred stock nor the argument of claimants in the attempt to distinguish these cases.

It is concluded that the debenture holders are not entitled to share in any distribution of the assets of the corporation in the hands of the receivers herein except as to the fund realized from the surrender of the insurance policies.

The exceptions taken to findings of fact Nos. 34, 36, 37, and 39 and conclusions of law Nos. 1, 3, 4, 6, 7, 8, 9, and 10 of the special master's report are sustained, and the other exceptions to such report are dismissed.

Findings and an order hereon may be submitted in accordance with this opinion.