43 So.2d 809

**STATE v. DE KALB COUNTY EX-
CHANGE, Inc.**

3 Div. 518.

Supreme Court of Alabama.
Jan. 19, 1950.

A. A. Carmichael, Atty. Gen., and H.
Grady Tiller and Wm. H. Burton, Jr.,
Asst. Attys. Gen., for appellant.

218

Ralph Ghent, Richard T. Rives and John C. Godbold, Montgomery, for appellee.

SIMPSON, Justice.

There is but one question of consequence in this case and that is whether a mutual farming or trucking cooperative association, organized without capital stock, is amenable to the share of stock tax provisions of § 25, Title 51, Code of 1940.

■ The answer is no. The appellee cooperative was organized pursuant to the provisions of Title 2 of the Code, authorizing such a corporation without capital stock, and the statute nor its charter can be subverted so as to make it a stock company.

The Commissioner of Revenue made a purported assessment for taxation on certain reserve funds of the corporation on the theory that these assets constituted shares of stock of the corporation and as such were subject to the tax provisions of said § 25, which as pertinent provides: "Every share of any domestic corporation * * * shall be assessed and the taxes thereon collected in the county wherein such corporation has its home or chief office in the state, and shall be assessed at sixty percent of its value to the person in whose name such shares stand on the books of the corporation and not to the corporation."

On an appeal to the circuit court in equity of Montgomery County, that court denied the assessment and the State has appealed.

The theory advanced by appellant to sustain the assessment seems to be that, though the charter of the corporation does actually provide for a nonstock corporation, by reason of a failure to distribute profits or dividends to the various members and patrons of the cooperative, it is holding these profits in a reserve fund designated "as a patrons reserve fund" and is using these reserve funds as a part of its operating capital; that the patrons of the cooperative are registered as owning proportionate interests in such reserves and that, therefore, these reserves constitute shares of stock of the corporation assessable for taxation under § 25, supra; that the by-laws of the corporation give the Board of Directors the discretionary power to issue to patrons of the association certificates of indebtedness as evidence of contributions of the patrons or the working capital of the association from earnings or otherwise; that such a certificate in essence represents a share of stock and that, although the certificates have not been issued, the proportionate interests which the various members of the corporation have in the net earnings are carried on the records of the corporation and that these net earnings are therefore subject to the share stock tax. Such a theory is a misapprehension of the purpose and effect of the statutes authorizing the organizing of a non-stock cooperative, as well as the meaning and intent of the share stock tax statute, supra.

The management of such a cooperative is vested in the board of directors, Title 2, § 118 and the board may or may not in its discretion issue such certificates,

Title 2, § 97, and if such certificates were issued they would not be shares of stock subject to the tax.

In reality the assessment aims at taxing the reserve funds of the corporation, which, of course, any successful business must have and which is authorized in § 127 of the act, as follows: "Such incorporated association may make charges to its members and deductions from the proceeds of their products for services rendered to them for the purpose of paying the expenses or operation and the maintenance and development of such association, and for the creation and maintenance of reserves for the purpose of paying expenses, retiring obligations acquiring, maintaining and operating property necessary or useful in carrying out the purpose of this subdivision and for caring for contingencies, and such reserves may be used or distributed as may be deemed proper by the board of directors under the by-laws and such corporation may make patronage dividends or distributions to its members * * *."

The effect really of the assessment is an effort to make "capital stock" of a legislatively authorized reserve; to convert an accrued surplus and profits of a lawfully organized non-stock corporation into capital stock and then tax it as such. The law could not operate to produce such a result and the end sought is in direct contravention of statutory authority.

The key to the fallacy in the assessment, as we view it, is the assumption that "capital," "capital stock," and "shares of stock" are identical terms within the meaning of the taxing statute. While such terms have been used sometimes indiscriminately without distinction, there is a well-defined difference between them. An apt definition appears in Person & Riegel Co. v. Lipps, 219 Pa. 99, 67 A. 1081, 1084, citing Clark and Marshall on Corporations, 1140, and 2 Beach on Corporations, § 466, as follows: "* * * there is a well-understood distinction, universally recognized, between 'the capital or property' of incorporated companies and 'their capital stock' 'The term "capital" applied to cor-

porations is often used interchangeably with "capital stock," and both are frequently used to express the same thing—the property and assets of the corporation—but this is improper. The capital stock of a corporation is the amount subscribed and paid in by the shareholders, or secured to be paid in, and upon which it is to conduct its operations; and the amount of the capital stock remains the same, notwithstanding the gains or losses of the corporation. The term "capital," however, properly means not the capital stock in this sense, but the actual property or estate of the corporation, whether in money or property. * * *'" See also West v. City of Newport News, 104 Va. 21, 51 S.E. 206, 208; Security State Bank v. Breen, 65 S.D. 640, 277 N.W. 497; Wells v. Green Bay & Mississippi Canal Co., 90 Wis. 442, 64 N.W. 69, 72; 5 Fletcher, Corporations, §§ 3413 et seq.

■ Our own court has similarly defined "capital stock." See Commercial Fire Ins. Co. v. Board of Revenue of Montgomery County, 99 Ala. 1(7), 14 So. 490, 492, 42 Am.St.Rep. 17; State v. Guaranty Sav. Building & Loan Association, 225 Ala. 481, 144 So. 104, 86 A.L.R. 819.

Likewise, in resolving the controversy it should be observed that capital stock and shares of capital stock are different in meaning. Capital stock, as above noticed, is property owned by the corporation, while the shares of capital stock are owned by the stockholders. And for the purpose of taxation, this distinction must be borne in mind, since they are two separate and distinct entities. Cooley, Taxation, 4th ed., § 868; Elmwood Cemetery v. Tarrant, 170 Ala. 459, 54 So. 186; Second Ward Sav. Bank v. City of Milwaukee, 94 Wis. 587, 69 N.W. 359, 361; City of Memphis v. Home Ins. Co., 91 Tenn. 558, 19 S.W. 1042; State v. Petway, 55 N.C. 396, 406; Judy v. Beckwith, 137 Iowa 24, 114 N.W. 565, 569, 15 L.R.A.,N.S., 142, 15 Ann.Cas. 890; Chicago Union Traction Co. v. State Board of Equalization, C.C., 112 F. 607, 611.

■ So even under appellant's theory, which we denounce as unsound, that "capi-

220

tal" and "capital stock" are identical in meaning and that the reserve funds are "capital stock," these funds still would not be within the reach of § 25, since the tax is not on the capital stock of the corporation but on the shares of the corporation "to the person in whose name such shares stand on the books of the corporation and not to the corporation", and there are no shares of stock and none are authorized. This makes the fallacy more manifest. It would be saying that because the corporation has capital, it has capital stock (though it would be illegal so to do, having been lawfully incorporated as non-stock), and ·hence, having capital stock (assets owned by the corporation), *eo instante* these assets become changed into shares of stock (something owned by the customers of the Exchange), so that this may be reached for taxation. The proposition contains its own antistrophe. We affirm the holding below.

Affirmed.

BROWN, LIVINGSTON, and STAKE-LY, JJ., concur.