115 So.2d 495

**JONES VALLEY FINANCE CO., Inc.**

v.

Melvin TENNILLE and Dorothy S. Brown.

6 Div. 645.

Court of Appeals of Alabama.

April 21, 1959.

Rehearing Denied May 12, 1959.

Davies, Williams & Wallace, Birmingham, for appellees.

Arthur D. Shores, Birmingham, for appellant.

at the rate of 4% per annum, payable semi-annually on the 1st day of July and the 1st day of January of each year. Dividends on Preferred Stock would be cumulated from the date of issue and would be paid or set apart for payment before any dividend on any other stock of the corporation would be paid or set apart."

A certificate stating, inter alia, "The Jones Valley Finance Company Incorporated issue Two Thousand (2000) shares of preferred stock of the par value of Fifty Thousand ($50,000.00) Dollars," and captioned "Increase of Capital Stock of Jones Valley Finance Company," was filed in the office of the Judge of Probate of Jefferson County February 13, 1946, and was recorded. See former provisions, Code 1940, T. 10, § 36 (later repealed, Acts 1951, p. 582).

No form of stock certificate was adopted by the Directors. Appellees received preferred stock certificates reading as follows:

"No. 1            40 Shares

"Jones Valley Finance Company
Incorporated
Birmingham, Alabama

"This is to certify that Melvin Tennille is the owner of Forty Shares of the Preferred Stock of Jones Valley Finance Company, Incorporated, transferable only on the Books of the Corporation by the holder hereof in person or by duly authorized Attorney on surrender of this Certificate properly endorsed.

"The Jones Valley Finance Company, Incorporated, hereby guarantees the payment of interest, accumulated, on said shares at the rate of 4%, payable semi-annually.

"In Witness Whereof the duly authorized officers of this Corporation have hereunto subscribed their names and caused the corporate Seal to be hereto affixed at Birmingham, Ala-

CATES, Judge.

This is a dual appeal (with two sets of assignments of error) from two judgments in parallel actions in which the trial judge, without the intervention of a jury, awarded damages in the amount of $694.40 in favor of plaintiff (appellee) Tennille, and $633.64 in favor of plaintiff (appellee) Brown. A motion for new trial was denied.

The appellant, which we will call Jones Valley, is a corporation with charter powers to divide its stock into common shares and preferred.

By a resolution of its Directors ratified by the then shareholders at a meeting held January 18, 1946, the company was authorized to emit 2,000 shares of $25 par preferred stock.

The priority clause of the enabling resolution (which was in evidence below) reads:

"That the holders of the Preferred Stock would be entitled to receive, when and as declared by the Board of Directors, Dividends from the surplus or net profits of the corporation,

bama, the 8 day of MAY A. D. 1946.
"s/W. H. Hollins s/Arthur D. Shores
    Secretary.    President
"(Seal)    Shares $25.00 Each"

In their respective complaints for each stock certificate, the appellees claimed $2,-000 with interest "for the breach of a covenant, under seal * * * by which defendant [Jones Valley] guaranteed to pay the plaintiff 4 per cent interest * * * which the defendant has failed to pay since [May 8, 1947 (count 1), and August 16, 1947 (count 2), in Tennille's case, and for the period February 28, 1947—February 28, 1953—Brown's stock transferred or retired]."

The assignments of error in both cases read:

"1 The Court erred in rendering a judgment in favor of the plaintiff-appellee and against the defendant-appellant in the above styled cause.

"2 The Court erred in refusing to grant defendant's motion to set aside its judgment rendered in this cause."

■ On oral argument the appellees objected to the absence, in the *copy* of the transcript of the record received by counsel for appellees, of a statement of the errors assigned. However, the original transcript contains a statement by appellant's counsel of his *mailing* a copy to appellees' counsel. Rule 1 (261 Ala. xx), Code 1940, Tit. 7 Appendix. The instant certificate complies substantially with Rule 44 (261 Ala. xxxvi). See also Ex parte Shoaf, 186 Ala. 394, 64 So. 615.

■ Assignment 1 is good to raise the sufficiency of the evidence in a nonjury case. Morgan Plan Co. v. Accounts Supervision Co., 34 Ala.App. 457, 41 So.2d 424; Lloyd's of London v. Fidelity Securities Corporation, 39 Ala.App. 596, 105 So.2d 728. Assignment 1 in Waldrop v. Langham, 260 Ala. 82, 69 So.2d 440, was assumedly treated as a good instrument of appellate pleading for the same purpose.

See also Stiles v. Lambert, 39 Ala.App. 15, 94 So.2d 784, affirmed 266 Ala. 184, 94 So.2d 788.

Assignment 2, in effect, consists of three separate assignments being each of the grounds in support of the motion for new trial, viz.:

"1. The Judgment is contrary to the evidence in the case.

"2. The Judgment is contrary to the law in the case.

"3. The Judgment is contrary to the evidence and law in the case."

Jones Valley's brief on appeal sets out one proposition of law:

"Where the instrument executed by the corporation, has every essential feature of a certificate of preferred stock, it is a certificate of preferred stock and not a contract for the payment of money.

"Where there is a question of doubt as to whether holders of so called preferred stock are in fact stockholders or creditors, in such a case the legal intention, as ascertained from a view of the whole transaction, *governs*.

"Holders of interest-bearing stock are ordinarily stockholders, and except where expressly authorized by charter or statutory provisions, the corporation can not as a general rule, contract to pay interest on shares."

and cites in support:

"Warburton v. John Wanamaker Philadelphia [329 Pa. 5] 196 A. 506
"Hazel Atlas Glass Co. v. Van Dyke [Dyke] & Reeves, Inc. [2 Cir.] 8 F. 2d 716;
"Jefferson Banking Company v. Trustees of Martin Institute [146 Ga. 383] 91 S.E. 463, 18 C.J.S. [Corporations] Par. 229."

■ By way of beginning, we think it clear that if the condition of § 237 of the Constitution is met as was the case here,

a corporation may issue cumulative or non-cumulative preferred stock.

One question here is whether the certificate is in fact and in legal contemplation a stock certificate or is it a certificate of indebtedness. These alternatives should not exclude the possibility of a tertium quid, viz., that it is a stock certificate coupled with a promise to pay interest.

If the nature of the payment called for under the guaranty clause of Jones Valley's certificate is that of interest on money borrowed, then, of course, the judgment below is due to be affirmed, since it is calculated on that basis, in accordance with the evidence as to the amounts from time to time unpaid, since the share certificates came into the ownership of the plaintiffs. If, however, the payment called for is but an expression calling for cumulative dividends, the case must be reversed, since dividends do not vest in shareholders until they have been declared.

Brown and Tennille have adduced no proof that Jones Valley declared a preferred dividend other than at a time earlier than the periods for which Jones Valley admits not paying; nor is there proof of a common dividend.

■ Whatever may be the principle in equity courts (cf. Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516, Doherty v. Mutual Warehouse Co., 2 cases, 5 Cir., 245 F.2d 609, and 5 Cir., 255 F.2d 489,) as to the compellability of the declaring of dividends, at law, as here, the corporation owes the stockholder no part of the corporate profits until the directors have declared a dividend, Curry v. Woodward, 44 Ala. 305, First National Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170, Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550, from which we quote below:

"* * * Dividends unpaid are assets of the company and liable for its debts."—Curry v. Woodward, supra.

"While it is largely a matter of discretion with the board of directors as to what use they will put the profits of the corporate business to, whether to declare dividends or use them in the business of the company, there is a limit to this discretion; and the courts will not allow the directors to use their power oppressively by refusing to declare dividends when the net profits and the character of the business warrant. A court of equity may compel the declaration of dividends at the suit of a minority stockholder. * * *"—Holcomb v. Forsyth, [216 Ala. 486, 113 So. 521] supra.

"* * * It is uniformly held that the earnings and profits of a corporation remain the property of the corporation until severed from the corporate assets and distributed as dividends. Until that time stockholders have no property interest therein.

\*    \*    \*    \*    \*    \*

"* * * It follows, of course, that the two per cent. cash dividend of $10 declared on the stock represented by certificate No. 157, after the death of Augusta Foster, accompanies that certificate."—First National Bank of Tuskaloosa v. Hill, supra [241 Ala. 606, 4 So.2d. 174].

"A stockholder has no valid subsisting claim for any part of the surplus or profits until a dividend is declared. First National Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170. * * *" Mudd v. Lanier, supra [247 Ala. 363, 24 So.2d 565].

An illustrated application of the foregoing is shown in Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420, 95 So. 191, 194:

"The decree fixed the ownership of 60 shares of stock in a corporation and awarded a money judgment for dividends from the time the corporation began to treat the stock as being treasury stock, acquired in the enforcement of its statutory lien against a

stockholder for his indebtedness to the corporation. * * *

"The bill avers that of two dividends that have been declared by the corporation, all had been paid to stockholders, other than alleged stockholder whose stock was sold and purchased by the corporation and treated as being retired, and did not aver that the corporation's earnings and assets were in excess of its liabilities and sufficient to authorize a declaration of further dividends in the amount of $4,680, the amount claimed. * * *

"The general rule is that a holder of common stock of a corporation cannot become entitled to dividends until the same is duly declared (in the absence of fraud) in an amount resting in the sound discretion of the directors and payable out of the profits of the corporation, with the exception of liquidation dividends. * * *

"In the absence of appropriate allegations and proof of the sufficiency of the corporation's assets over its liabilities and stock, the decree for the $4,680 was unwarranted. The effect of the declaring of the dividends only to the amount of $14,508 was prima facie a declaration by the directors that dividends in the amount of $19,188 may not be declared. If the 60 shares of stock in the corporation that were originally owned by Guy Hartwell had been entitled to share in dividends, it was in $14,508 duly declared and not in $19,188 as decreed by the trial court."

■ However, it seems to be accepted that an Alabama corporation may—if not thereby defeating its then creditors—declare dividends which may come equally from the earned surplus or from the capital furnished by the shareholders of any class. Thus, the 5th Circuit, with two of the three judges being from Alabama, in Sumter Farm & Stock Co. v. United States, 151 F. 2d 975, 976, said as follows:

"The Constitution of Alabama and the Code sections referred to carry no express inhibitions against the payments of dividends by a solvent corporation. Code of 1940, Title 10, Sec. 26 (6990); Code of 1940, Title 10, Sec. 27(6991); Constitution of Alabama 1901, Art. 12, Sec. 234; Code of 1940, Title 10, Sec. 36(7003).

"Moreover, counsel has not called to our attention, and we have been unable to find, a decision of the Supreme Court of Alabama construing the provisions under consideration as prohibiting solvent corporations, such as we have here, from paying a dividend, *even though it be shown to have a deficit in its capital.*" (Italics added.)

Thus, a guaranteed dividend might be compelled in a court of equity, but in the present record we have no evidence as to available surplus or stockholders' equity not encroached upon by a deficit.

■ Ordinarily the expressions "preferred stock," "guaranteed dividends," and even "guaranteed interest" have been construed not to indicate a corporate debt. Sometimes this comes from the rule prevailing in some jurisdictions that dividends may be paid only from earnings. As shown in the Sumter Farm & Stock Co. case, supra, this restriction does not obtain in the case of an Alabama corporation.

Thus, the reasoning in cases such as Jefferson Banking Co. v. Trustees, of Martin Institute, 146 Ga. 383, 91 S.E. 463, Belfast & M. L. Railroad Co. v. City of Belfast, 77 Me. 445, 1 A. 362, Taft v. Hartford, P. & F. R. Co., 8 R.I. 310, loses much of its vigor. Even the trenchant views of the eminent Michigan jurist, Judge Cooley, in Lockhart v. Van Alstyne, 31 Mich. 76, must be laid aside as of little help in this decision.

■ In Code 1940, T. 10, § 39, Alabama corporations are empowered to create varied classes of stock "including debenture stock and preferred stock of one or more classes." "Debenture stock" is usually

thought of as a British security comprising the features of a fully registered corporate bond under a trust indenture with an agreement for a legal mortgage. It apparently carries no maturity date for the principal sum, being in the nature of an annuity, Attree v. Howe, 9 Ch.D. 337. Nor can the holders "be present or vote at any meeting of the company." § 31, Companies Clauses Act 1863 (26 and 27 Vict. c. 118).

If the instant certificates represent debenture stock in the sense used in England, then the judgment below is due to be affirmed. Thus, §§ 24 and 27 of Companies Clauses Act, 1863, supra, read:

"24. *Interest on debenture stock to be a primary charge.*—The interest on debenture stock shall have priority of payment over all dividends or interest on any shares or stock of the company, whether ordinary or preference or guaranteed, and shall rank next to the interest payable on the mortgages or bonds for the time being of the company legally granted before the creation of such stock; but the holders of debenture stock shall not, as among themselves, be entitled to any preference or priority."

"27. *Arrears may be recovered by action or suit.*—If the interest on debenture stock is in arrear for thirty days next after any of the respective days whereon the same is payable, the holder for the time being thereof may (without prejudice to his power to apply for the appointment of a receiver or judicial factor) recover the arrears with costs by action or suit against the company in any court of competent jurisdiction."

In a corporate franchise tax case, People ex rel. S. Cohn & Co. v. Miller, 180 N.Y. 16, 72 N.E. 525, there was a corporate declaration reading in part:

"'Third. The amount of the capital stock of the said corporation is one hundred and fifty thousand dollars ($150,000), of which one hundred

thousand dollars shall be preferred debenture stock, being obligations of the company as to dividends and capital and entitled to cumulative dividends at the rate of six per cent (6%) per annum; and the remaining fifty thousand dollars ($50,000) shall consist of common stock.'"

The stock certificate in question contained the following:

"'This is to certify that * * * is the owner of * * * preferred debenture shares of the capital stock of S. Cohn & Co., transferable only on the books of the company by the holder thereof in person or by attorneys on surrender of this certificate. Said preferred debenture stock shall entitle the holder thereof to receive out of the net earnings, and the company shall be bound to pay, a fixed yearly cumulative dividend of six per centum, but no more, payable semiannually, before any dividend shall be set apart or paid on the common stock. The holders of this preferred stock shall, in case of the liquidation or dissolution of the company, be entitled to be paid in full, both the principal of their preferred debenture shares and the accrued dividends charged, before any amount shall be paid to the holders of the common stock.'"

The question was: In computing the assessment, should the $100,000 preferred debenture stock be considered a debt? The Court of Appeals sidestepped this question and merely upheld assessing the capital as including the $100,000 because the shareholder in the proceeding was estopped from denying so, since he owned shares described in the certificate of incorporation as being part of the capital stock of the corporation.

However, we have in Alabama a statute expressly authorizing debenture stock which apparently, as between stockholders of various classes, and as between them and the corporate entity, would expressly

permit of relationship partaking of some of the characteristics pertaining to an owner and also some belonging to a creditor. People ex rel. S. Cohn & Co. v. Miller, supra, was careful not to preclude such a status, and the New York corporation statute there referred to only mentioned common stock and preferred. Hence, we, with a statute which uses the term debenture stock, should not in any wise dismiss the legislative language as mere surplusage.

Williams v. Parker, 136 Mass. 204, involved the construction of a private act of the General Court enabling the Greenfield Tool Company to issue up to 250 shares of preferred stock, "the said company to give its guaranty that each share of said stock shall receive semiannual *dividends* of four dollars," etc. (Italics added.)

The court, per Field, J., held that with respect to this stock—in a suit to recover back dividends paid while the business of the Tool Company had been unprofitable— the effect of the statutory language, St.1855, c. 143, was:

"* * * if the net earnings of the corporation are insufficient to pay such dividends, the corporation shall make good the difference out of any property it has."

The opinion referred to a general act authorizing all corporations to issue similar "special stock." Fletcher, Corporations (Perm.Ed., 1958, Rev. Vol. 11), § 5292 and footnote 29 thereto.

In Allen v. Herrick, 15 Gray 274, 81 Mass. 274, dealing with an insolvency claim that "special stock" was a debt of the corporation, even though the event of its redemption did not occur until after the time of insolvency, the Massachusetts court held that, while the holders of "special stock" were entitled to their statutory preferments over the general stockholders, the statute did not give them "the right to claim the amount of their stock as a debt against the corporation, which is entitled to be proved against [the bankrupt] estate *to the diminution of the assets to which the general creditors*

*would be entitled."* (Italics and bracketed matter supplied.)

We have adverted to the latent ambiguity in "debenture stock" not to define or clarify that term, but solely to emphasize that § 39, supra, in using "preferred stock" in a context with "debenture stock" would not have employed both terms if they were to be interchangeable. Cf. Carson, Pirie, Scott & Co. v. Duffy-Powers, Inc., D.C., 9 F.Supp. 199.

In recent years the impact of the Federal corporate income tax has made it necessary for the Federal courts seemingly to employ more exacting standards of analysis in the field of the classification and nomenclature of corporate obligations than prevailed in some of the earlier cases such as those involving intra-shareholders or bankruptcy controversies.

This trend was anticipated to some extent by recognition, apparently presented by the status of Massachusetts "special stock," of the power of a legislature to confer a lien upon the property of a company in favor of stockholders, Hewitt v. Linnhaven Orchard Co., 90 Or. 1, 174 P. 616, Kinston Cotton Mills v. Wachovia Bank & Trust Co., 185 N.C. 7, 115 S.E. 883, 29 A.L.R. 251. See also Status of Holders of Hybrid Securities: Stockholders or Creditors? 45 Yale L.J. 907.

Nor can we see any reason why it is *always* necessary to say that the persons represented on the liability side of a corporate balance sheet need be given a mutually exclusive classification. State v. De Kalb County Exchange, 253 Ala. 217, 43 So. 2d 809. The satiric Gilbertian notion that predestined all children to be of one political faith or its opposite is perhaps of more validity than a rigid systematizing of investors into creditors or stockholders.

Our Legislature, in having provided the power in corporations to issue debenture stock, has thereby indicated that the law (on this matter) should put no impediment to corporate ingenuity which may be em-

ployed in the bargaining leading up to business financing, nor in the expression of the parties' bargain.

■ We are satisfied the power to make such a guaranty as was used here exists in § 39, supra. The remaining question is solvable by the familiar—and often invisible—rule of ascertaining the intent of the parties to the agreement.

Section 237 of the Constitution makes the owners of two-thirds of the common stock necessary and indispensable parties to the issuance of preferred shares. Code 1940, T. 10, § 39, reads in part:

> "Any corporation * * * may create * * * two or more kinds of stock of such classes (including debenture stock and preferred stock of one or more classes) * * * with such designations, preferences (including preferences as to dividends and assets) * * * as shall be stated or expressed * * * in the certificate of amendment thereof * * *"

In Lee Telephone Co. v. Commissioner of Internal Revenue, 4 Cir., 260 F.2d 114, 115, it is said:

> "In modern corporate practice, securities are frequently issued containing provisions formerly thought characteristic of other types of securities. Subordinated debentures frequently have attributes of preferred stock and preferred stock issues sometimes contain provisions found typically in bonds or debentures. In such a case when the issue arises and it is necessary for the Court to determine whether particular payments are interest and deductible by the payor in computing its income taxes, or dividends, and, therefore, nondeductible by the payor, it is necessary to look at all of the terms and provisions of the particular security, the purpose for which it was issued, the surrounding circumstances and the general intention of the parties. The presence or absence of a particular pro-

vision rarely can be held controlling and conclusive, and the security and all payments thereon must be finally characterized after it has been viewed in all of the light which the scene affords."

In United States v. Title Guarantee & Trust Co., 6 Cir., 133 F.2d 990, 991 (with Allen, J., dissenting), we find:

> "The question to be determined on this appeal is whether amounts paid by a corporation on certain certificates, designated as preferred stock, should be treated as interest payments on indebtedness, or as dividends on stock. The district court held that the payments were interest on indebtedness and, therefore, properly deductible from gross income for tax purposes under § 23, Title 26 U.S.C.A.Int.Rev. Code.
>
> * * * * * *
>
> " * * * In any event, the fact that the agreement provided for cumulative dividends to be paid, *together with the face value of the stock,* on a fixed date, is equivalent to a provision that such payments be made regardless of earnings." (Italics supplied.)

See also a good detailed analysis in Best v. Oklahoma Mill Co., 124 Okl. 135, 253 P. 1005, holding certain covenanted mandatorily redeemable preferred shares were evidence of a corporate debt, prior to a mortgagee.

While the opinion qualifies the canon of construction to situations in which creditors and stockholders find themselves in adversary attitudes, we believe the rule below stated in a bankruptcy case has the advantage of workability. We quote from In re Hicks-Fuller Co., 8 Cir., 9 F.2d 492, 493:

> "Examination of the above instrument upon which these claims are founded, reveals many attributes and qualities commonly attaching to preferred stock as such. It is also a rule of construction that an instrument hav-

ing such attributes will, where the rights of creditors are involved, be construed as stock unless it clearly appears that a different intention was present in the minds of the contracting parties. * * *"

The Hicks-Fuller stock certificates did not set out a provision in the articles of incorporation which—like the corporate resolution of Jones Valley—provided for payment of the preferred stock dividends only from "a fund subject to dividend application * * * which would not affect the rights of creditors."

The court, holding the provisions of the corporate charter to be competent evidence, stated:

" * * * The evidence was competent. The status of these claimants depended upon instruments, on their face, issued under and in accordance with the articles of incorporation. The meaning and legal effect of those instruments being in question, no evidence could be more natural or useful than those provisions of the articles of incorporation under which they were issued which bear upon the character of such instruments. * * *"

█ We consider the omission of preferences from the stock certificate was supplied upon reference to the resolution adopted at the meeting of the stockholders of January 18, 1946. The expression "guarantees the payment of interest" when appearing in the text, as here, with the watermark on the face of the certificate reading in letters seven-eighths inch high, "Preferred," is such a patent ambiguity as to require enquiry. It may be that the transaction has a different aspect under the Blue Sky law, Code 1940, T. 53, but the remedy sought here in nowise is founded of § 22 thereof. Moreover, a stockholder acquires his status upon sale or subscription (or transfer) and not upon issuance of his certificate, Gill Printing Co. v. Goodman, 224 Ala. 97, 139 So. 250, Nashville Trust Co. v. Cleage, 246 Ala. 513, 21 So.2d

441. Thus, Jones Valley was paid $1825 on May 21, 1946, but did not issue the stock for 73 shares, the basis of the Brown case, until February 28, 1947.

Tennille, who had received his certificates in May and August of 1946, transferred them both to his mother on December 1, 1948. He testified that she transferred the same shares back to him in the latter part of 1950. Dividends or interest were not paid after January 1950.

█ We consider that the instant certificates evidence the ownership of preferred stock as distinguished from a certificate of indebtedness and also do not include a promise to pay interest. Our reasons for this include (1) the legend employed on the certificate itself, using "preferred stock" (words of statutory connotation), coupled with the similar indication found on one of the panels on the reverse of the certificate; (2) the resolution of January 18, 1946, which, by law, is always available for the plaintiff's inspection at convenient hours at the company office; (3) the filing of the statutory certificate (of charter amendment) in the office of the judge of probate making the statement of the recapitalization a matter of public record, T. 10, § 40; and (4) the absence of any compulsory redemption date of the preferred shares.

█ The expression "guarantees the payment of interest" fitted into the remainder of the text is but a provision calling for a cumulative dividend, which, of course, would mean that the payment would not be available, except upon declaration by the board of directors unless otherwise required under the rule of Holcomb v. Forsyth, supra: this because a dividend as distinguished from an absolute promise to pay interest is the normal thing to expect as an incident of the ownership of preferred stock.

Accordingly, the judgments below are due to be reversed and the causes remanded for new trial consistent with this opinion.

Reversed and remanded.

**294**

## On Rehearing.

The appellees earnestly urge that the corporation cannot now say the preferred stock is void. Although appellees claim the "stock was fraudulently issued to them," they insist that the corporation must live up to the promise on the face of the stock certificate.

Their pleadings did not cover an action for deceit. Since they have sued for a breach of a covenant, they have waived the tort in this proceeding.

We hold the stock certificates are not the sole memoranda of the agreement between the parties—certainly not under the facts here.

We ignored Randle v. Walker, 17 Ala. App. 211, 84 So. 551, because of the non-concurrence of a majority of the court in what was said of § 3479 of the 1907 Code, and because the quotation from 4 Thompson on Corporations does not fit the facts here.

Application overruled.